HALL, Judge.
These two consolidated cases arose from a vehicular collision which occurred in Jefferson Parish on March 24, 1963 at the intersection of Airline Highway (U.S. 61) and Arnoult Road between a Chevrolet automobile owned and operated by William J. Mahoney, Jr. and a Ford car owned and operated by Herman A. Rodriguez. The collision resulted in personal injuries to Christine Huisman, a guest passenger in the Ma-honey vehicle, and in damage to both cars.
One of the consolidated cases is a suit by Christine Huisman for the personal injuries received by her. Made defendants in that suit are Southern General Insurance Company (Mahoney’s liability insurer) and North River Insurance Company (Rodriguez’ liability insurer). Judgment was prayed for against both insurers in soli-do, it being alleged by plaintiff that the accident was due to the joint negligence of both drivers. In their answers to this suit each of the defendant insurers denied negligence on the part of its own insured and alleged that the accident was due solely to the negligence of the other defendant’s insured.
The other case is an action by Herman A. Rodriguez and North River Insurance Company, his subrogated collision insurer, against William J. Mahoney, Jr. and Southern General Insurance Company, Mahoney’s liability insurer, for property damage to the Rodriguez car.
Following trial of the consolidated cases on the merits the District Judge, being evidently of the opinion that the accident was due solely to negligence on the part of Ma- *406 honey, rendered separate judgments in which he:
1) Rendered judgment in favor of Christine Huisman against Southern General Insurance Company for $3,105.09 and dismissed her demand against North River Insurance Company; and
2) Rendered judgment in favor of Rodriguez and North River Insurance Company against Mahoney and Southern General Insurance Company in solido in the aggregate amount of $499.74 for damage to the Rodriguez car.
Mahoney and Southern General Insurance Company appealed jointly from both judgments.
The sole issue on appeal is the question of liability. Quantum is not at issue.
Appellants take the position that the Trial Court erred in holding that the accident was due to Mahoney’s negligence. On the contrary they maintain that Mahoney was free from fault and that the accident was due solely to negligence on the part of Rodriguez. Alternatively appellants take the position that both drivers were at fault. The appeal primarily involves disputed questions of fact.
The collision between the Mahoney and Rodriguez vehicles occurred on the Airline Highway at the intersection of Arnoult Road. A diagram introduced and filed in evidence shows that the highway at the point where the accident occurred runs in a north-south direction and is composed of six travel lanes divided by a narrow strip. The northbound and southbound roadways are each 32 feet in width. The three traffic lanes composing the southbound roadway are separated by white lines painted on the highway surface.
The accident occurred shortly after midnight. The weather was good; the traffic was light and the road surface was dry. Mahoney, accompanied by the plaintiff, Christine Huisman, had been driving north on the highway. At the intersection of Ar-noult Road he executed a left hand turn with the intention of crossing over the southbound roadway and entering a parking area at a restaurant located on the northwest side of the intersection. As he was crossing over the southbound roadway the right rear side of his car was struck by the right front of the Rodriguez vehicle which hackbeen travelling south on the highway. Before making his turn Mahoney had come to a stop in the neutral ground with his turn light indicator burning.
Practically all of the facts are in dispute, particularly the lane in which the Rodriguez vehicle was proceeding prior to the accident, and its speed. The speed limit at this point on the highway was 40 miles per hour.
The only witnesses to the accident were Mrs. Huisman, Mahoney, Rodriguez and a Mr. Hodges, who was the sole passenger in the Rodriguez car.
Mrs. Huisman, the plaintiff, testified that she was a passenger in the Mahoney automobile; that Mahoney made a proper turn, i.e. that he came to a stop at the intersection and put his turn indicator on; that while thus stopped she saw the Rodriguez vehicle about one and one-half or two blocks away from the intersection, travelling south in the right hand traffic lane next to the shoulder of the highway. She estimated its speed to be between 50 and 55 miles per hour, and “I presume we had plenty of time to get on across the highway.” She further testified that Mahoney began his left turn and proceeded across the southbound roadway at a speed of 10 to 12 miles per hour; that Ma-honey’s car had completely crossed two of the southbound traffic lanes of the highway and its front wheels were completely off the pavement going into the parking lot when she looked up and seeing the Rodriguez vehicle two or three lengths away called out: “Bill, he is going to hit us;” and thereupon the collision occurred. On cross-examination Mrs. Huisman admitted she did not drive a car and further remarked that “ * * * it is too hard to really estimate the speed of another automobile, on-coming *407 automobile * * * but * * * I have just estimated it * * * about fifty, fifty-five miles an hour.”
Mahoney’s testimony was basically the same as that of Mrs. Huisman. He mentioned that the neutral ground divider at Airline Highway at this intersection was approximately three feet wide. He testified that he brought his vehicle to a stop at the break in the neutral ground divider for a matter of three or four seconds to allow a southbound vehicle to pass and after it passed he saw “ * * * another car coming in the right lane, coming toward New Orleans, approximately a block, block and a half away; well, my judgment (sic), I thought I had plenty time to get over the highway.” He further testified that he was still facing north when he first saw the Rodriguez car; that he made his turn and proceeded across the highway at about 10 miles per hour looking straight ahead and without looking to the right to observe or ascertain the position of the Rodriguez vehicle; that his car was three-quarters off the highway when he was struck at the right back fender ; that at the time he was struck only the rear wheels of his vehicle were on the highway.
On cross-examination it was brought out that Mahoney had given a signed statement to an insurance adjuster shortly after the accident which contains the statement: “There was one car in the three-lane highway and he seemed about one-half block away and next to the curb.”
As to the speed of the Rodriguez car Ma-honey testified: “No, I couldn’t estimate his speed coming, but I would say he was doing seventy or eighty miles an hour * * * if he would have been going slow, forty miles an hour, the impact should have stopped him right there, but he went almost a quarter of a block further up after the impact.”
Rodriguez testified that he left Hammond for New Orleans about 11 P.M. accompanied by Mr. Richard L. Hodges; that just prior to the accident, while proceeding south on the Airline Highway he came to a stop for a red light at Central Avenue, approximately three blocks from the site of the accident. He then started forward and was travelling in the middle southbound lane of the highway at approximately 40 miles per hour and on reaching a point some 60 or 65 feet from the intersection of the highway and Arnoult Road he observed the Mahoney vehicle for the first time; that at this time Mahoney was pulling into the left lane (next to the neutral ground) of the southbound roadway) that he immediately put on his brakes and cut to the left in order to avoid a collision; that the front part of his car struck the Mahoney vehicle on the right back side; and that his car then hit the neutral ground and swerved back into the middle of the highway and came to a stop. He further testified that the collision occurred in the middle lane of the highway. On cross-examination it was brought out that in a statement he gave to an adjuster for his own insurance company shortly after the accident there appears the following sentence : “I was in the right-hand lane travel-ling about forty-five m.p.h.; I was in the right-hand lane travelling about forty-five m.p.h. as I approached the intersection.” The statement itself is not in the record.
Richard L. Hodges testified that he was a passenger in the Rodriguez vehicle; that just before the accident Rodriguez stopped for a red light; that at that time he noticed a car on his right, and that when Rodriguez started up he was travelling in the middle southbound traffic lane at about 40 miles per hour; that when he first saw the Maho-ney vehicle it had not completely made its turn but was coming across the highway and that “It was real near, less than sixty, seventy feet;” that Rodriguez applied his brakes and swerved to the left toward the neutral ground. He further testified that the point of impact of the collision was approximately on the dividing line between the middle and the neutral ground lanes. On cross-examination Hodges testified that he first noticed the Mahoney vehicle when Rodriguez applied his brakes.
*408 The only other testimony bearing upon the accident was that given by State Troopers Trosclair and Borgstede who investigated the accident. Unfortunately their testimony is of little value. Trosclair could recall nothing from memory even after reading the report. Borgstede’s memory of the investigation was only slightly better than Trosclair’s.
Borgstede stated that after reading the report his memory was refreshed only as to part of it. He brought out that his only duty at the investigation was to take “the physical evidence at the scene.” He testified that the debris, which might indicate the point of impact, was located “in the first lane next to the neutral ground or in between the two lanes actually.” He stated that he “paced off” approximately fifty feet of skid marks caused by the Rodriguez vehicle, and that they angled toward the left from the center traffic lane into the neutral ground lane. He further testified that the Rodriguez vehicle came to rest in the middle of the roadway still headed south while the Mahoney vehicle came to rest headed north after striking the corner of the Texas Motel which is situated on the southwest corner of the intersection.
However it developed on Borgstede’s cross-examination that the report from which he refreshed his memory was not prepared by him and was unsigned and that his testimony concerning the debris and skid marks was based upon a diagram, not made by him, but rather from information which he gave Trosclair who then drew the diagram.
From the foregoing review of the testimony it is seen that all of the material facts in the case are in dispute.
 While it is indicated in each of the judgments appealed from that the Trial Judge dictated reasons for judgment to the reporter “to be filed of record hereafter”, no reasons for judgment appear in the record. Obviously, however, the Trial Judge accepted the testimony of Rodriguez and his passenger, Hodges, and we are unable to say that he erred in so doing. The Trial Court’s factual conclusions are entitled to great weight particularly those involving the credibility of witnesses and will not be disturbed unless they are found to be clearly erroneous.
The testimony of Rodriguez and Hodges indicates that the collision was due entirely to the negligence of Mahoney in making a left turn across the highway when it was clearly unsafe for him to do so. (See Washington Fire & Marine Insurance Company v. Firemen’s Insurance Company, 232 La. 379, 94 So.2d 295; see also LSA-R.S. 32:235.) Their testimony also indicates that Rodriguez was not negligent in the operation of his vehicle and that he did all he was able to do to avoid the accident.
Appellants urge inter alia, that the testimony of the plaintiff, Christine Huis-man, constitutes a judicial confession under LSA-C.C. Art. 2291 exonerating Mahoney of any negligence and/or liability.
This argument has recently been answered by the Supreme Court in the matter entitled Jackson, Sr. et al. v. Gulf Insurance Company et al., 250 La. 819, 199 So.2d 886. (Decided June 5, 1967; rehearing refused June 30, 1967).
In its decision the Court began by saying:
“This action for damages ex delicto poses the question of whether the disserv-ing testimony of a plaintiff as to the circumstances of an automobile accident bars his recovery as a judicial confession or conclusive admission, despite other preponderating evidence supporting the liability of the defendant * * * ”
After an exhaustive consideration of the question the Court concluded:
“ * * * To be an effective agency of truth, the trier of fact must be allowed to weigh the disserving testimony of a party, as well as other evidence. When the truth is found elsewhere, the party’s dis- *409 serving testimony must yield in order to achieve the ends of justice. Hence, we reject as unsound the several expressions of the Courts of Appeal tending to equate a party’s disserving factual testimony with a judicial confession.
“We hold that the plaintiffs’ disserving testimony is not a judicial confession or conclusive admission. Hence, they are entitled to recover.”
For the foregoing reasons the judgments appealed from are affirmed; costs of appeal to be borne by appellants.
Affirmed.