169 So.2d 213 (1964)
Mrs. Dessie D. GREEN, Plaintiff-Appellant,
v.
AMERICAN HOME ASSURANCE COMPANY et al., Defendants-Appellees.
No. 10225.
Court of Appeal of Louisiana, Second Circuit.
June 10, 1964.
On Rehearing October 30, 1964.
Application for Rehearing Denied December 1, 1964.
*214 Booth, Lockard, Jack, Pleasant & LcSage, Shreveport, for plaintiff-appellant.
Bethard & Taylor, Shreveport, for American Home Assurance Co., defendant-appellee.
Hendrick & Fant, Shreveport, for James L. Arnston, defendant-appellee.
Wilkinson, Lewis, Woods & Carmody, Shreveport, for Marquette Cas. Co., defendant-appellee.
Before HARDY, AYRES and BOLIN, JJ.
AYRES, Judge.
By this action plaintiff seeks to recover damages for personal injuries sustained in an automobile collision of November 13, 1962, at the intersection of Hearne Avenue and Corbett Street in the City of Shreveport. Involved were a Ford, the family car of plaintiff and her husband, Samuel H. Green, driven by him, and a Chevrolet automobile driven by James L. Arnston. Made defendants in addition to Arnston are Marquette Casualty Company, Arnston's automobile insurer, and the American Home Assurance Company, insurer of the Green automobile.
Negligence charged to Green, plaintiff's husband and host, consists of a failure to maintain a proper lookout and of making a left turn when such movement could not be made in safety. Charges of negligence directed to Arnston consisted, in addition to his failure to keep a proper lookout, of driving at a reckless rate of speed, in excess of 60 m. p. h., in a 35-m. p. h. speed zone, and in disregard of the rights of others. The American Home Assurance Company denied any negligence on the part of its assured and asserted that the negligence of Arnston was the sole cause of the collision. Marquette Casualty Company likewise denied any negligence on the part of Arnston and asserted that the negligence of Green, in the aforesaid particulars and in failing to keep his automobile under control, was the sole cause of the accident. This defendant also denied that its policy afforded coverage to the Chevrolet operated by Arnston.
The trial court absolved Green of negligence and upheld the defense of lack of insurance coverage of Arnston's automobile urged by defendant Marquette Casualty Company. Negligence of Arnston, however, was held to be the sole, proximate cause of the accident. In accordance with these conclusions, there was judgment for $7,500 in favor of plaintiff against Arnston. From that portion of the judgment rejecting her demands against the defendants, American Home Assurance Company and Marquette Casualty Company, plaintiff prosecutes this devolutive appeal.
The question of fault in the occurrence of the accident presents only a factual issue. The facts established in the record support the conclusions reached by the trial court. These facts, so far as material, may be briefly reviewed.
Hearne Avenue, a main 4-lane north and south thoroughfare of the City of Shreveport, is intersected and crossed at right angles by Corbett, a 2-way street. Hearne Avenue, has a width from curb to curb of 66 ft. 2½ in.; Corbett Street, 30 ft. 9 in.
*215 There are, at the intersections on Hearne Avenue, insets into the neutral ground serving as left-turn lanes. Green, accompanied by his wife, was proceeding northward on Hearne Avenue. As he approached the intersection at Corbett Street, he entered the left-turn lane. Although the traffic signal light was favorable for traffic on Hearne Avenue to proceed through the intersection, Green stopped and awaited the clearing of the intersection of southbound traffic. Thereafter, with Arnston's car a block or more away on Hearne Avenue, proceeding south, Green undertook to negotiate the intersection. As the front of his car entered Corbett Street, the rear end extending only 12 feet into the intersection, the Green car was struck on its rear right-hand side by the Arnston vehicle. The Green Ford came to rest in Corbett Street near the southwest corner of the intersection, headed eastward. The Arnston Chevrolet, headed northwesterly, rested in the southwest corner of the intersection.
No necessity exists for reviewing the testimony of the several witnesses in detail. It suffices to state that, from the record, it conclusively appears that Arnston passed a vehicle to his right one-half block away from the intersection at a fast and reckless rate of speed and immediately turned into the right southbound traffic lane and struck the Green car as it was leaving the intersection and entering Corbett Street. The Green vehicle had, at the time, cleared Arnston's lane, the inner southbound traffic lane. Arnston skidded all four wheels of his vehicle, in a straight line, a distance of 120 ft. 2 in. to the point of the impact of the collision.
From these facts, the conclusion is inescapable that Green, in his attempt to negotiate the intersection, had a reasonable opportunity to complete the maneuver without obstructing the normal movement of traffic, and that the accident would not have occurred except for Arnston's excessive and unlawful speed of approximately 60 m. p. h.
We not only fail to find manifest error in the conclusions reached by the trial court on the question of fault but, from our own review of the record, we conclude that its findings were abundantly supported by the record.
As to the insurance coverage on the Chevrolet automobile by Marquette's policy, plaintiff, as well as the trial court, considered the car as recently acquired by Arnston. This fact was questioned by defendant insurer. The only testimony as to the transfer of ownership of the car from Jerry Horne was that of Arnston himself. This testimony, however, would establish that the sale was made during the latter part of October, 1962, when Horne told Arnston he might take the car for the payments. Thus, Arnston acquired the car within 30 days prior to the occurrence of the accident. Nevertheless, title to the car remained in Jerry Horne until the summer of 1963.
At the time of the accident there was in force Marquette's policy designating "Jerry Arntson" as the insured and covering a 1962 Ford Galaxie. The insured, under the terms of the policy, in addition to the person designated therein as such, included, as to an owned automobile, the insured's spouse. By amendment attached to the policy, it was agreed that an
"`Owned Automobile' means
"(a) a private passenger, farm or utility automobile described in the policy,
"(b) * * *
"(c) a private passenger, farm or utility automobile ownership of any of which is acquired by the named insured during the policy period, provided
"(1) it replaces a described automobile, or
"(2) the company insures all private passenger automobiles, farm automobiles *216 and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days following such date, * * *."
Adjustment of the premium on the insured's acquiring additional vehicles was authorized.
This court, in interpreting identical language of a policy endorsement, made an appropriate observation found in Mathews et al. v. Marquette Casualty Company et al., La.App.2d Cir., 1963, 152 So.2d 577, 581 (writs denied):
"The clear import of this language is that an additional automobile of the insured, under circumstances described in the policy, is automatically covered until thirty days following the date of its delivery, but that such coverage ceases at the end of that time if the insured fails to give the required notice to the insurer. See: Collard v. Globe Indemnity Co., La.App., 50 So.2d 838 (1st Cir. 1951)."
A contention is made, however, that the aforesaid provision has no application inasmuch as Arnston owned two additional automobiles, a Studebaker and a Jaguar, neither of which was insured by the defendant Marquette Casualty Company. Arnston testified that neither of these cars had been in operation or in a condition to operate for several months prior to the acquisition of the Chevrolet. The Studebaker had no windows, battery, or gearshift; the shifting mechanism and bearings were worn out. The Jaguar had no battery or fuel pump; the engine had "thrown" four rods; the transmission was inoperable. Neither of these cars was in condition to be operated, nor were they insurable automobiles. Exclusive use had been made, in the meantime, of the Galaxie and its predecessor. The language of the policy requiring that all automobiles owned by the named insured be included within the express coverage of the policy does not contemplate a vehicle which a reasonable person would not, on account of its condition, include in a policy of public liability insurance. From this, it can only be concluded that defendant Marquette's policy covered the Chevrolet automobile which defendant Arnston was operating at the time of the accident.
Moreover, the provisions of defendant's family combination insurance policy extend coverage to additional vehicles not described in the policy in the absence of a special endorsement specifically excluding coverage of such additional vehicles. Indiana Lumbermens Mutual Insurance Company v. Russell, 243 La. 189, 142 So.2d 391; Lejeune v. State Farm Mutual Automobile Ins. Co., La.App. 1st Cir., 1958, 107 So.2d 509 (writs denied); Anderson v. Fontenot et al., La.App. 3d Cir., 1964, 163 So.2d 366; Pel-State Oil Company, Inc., v. Weimer et al., La.App. 2d Cir., 1963, 155 So.2d 218 (writs denied). It was pointed out in Anderson v. Fontenot et al., supra, with reference to coverage under the policy:
"It is quite clear from the evidence that the policy specifically described a 1955 Buick automobile, and that there was no intention on the part of Fontenot or the Ville Platte Insurance Agency to insure the 1959 Dodge which was involved in the accident. However, the insurance contract, a `family combination' policy originally issued on December 20, 1962, required a special endorsement so as to restrict its coverage to described vehicles only. Without such an endorsement, all owned automobiles are covered by that type policy, and, in the absence of fraud, the policy cannot be judicially amended so as to conform to what may have been the true intent of the parties. Indiana Lumbermens Mutual Insurance Company v. Russell, 243 La. 189, 142 So.2d 391; Pel-State Oil Company v. Weimer, (La.App., 2 Cir., 1963), 155 So.2d 218." (163 So.2d 366, 369.)
No exclusionary clause is attached to the policy now before us.
*217 We may observe, however, that defendant-appellee Marquette Casualty Company questions Arnston's acquisition and ownership of the Chevrolet automobile involved in the accident. Such a finding would afford defendant no relief. In that instance, Arnston would have, at least, been operating the car with the permission and consent of the owner. A named insured, under the policy herein concerned, is, by specific terms, afforded coverage while operating a vehicle of another with such other's permission or consent.
Lastly for consideration is the matter of an award sufficient to compensate plaintiff for the injuries sustained. By force of the impact of the collision, the car in which she was riding was spun around and headed in the opposite direction. During this maneuver, plaintiff was thrown from the car to the street's surface. She sustained numerous cuts, bruises, and contusions over the body, loss of a portion of the left big toe, the fracture of several bones of the foot, and was rendered unconscious. Pain and suffering were described as considerable. Plaintiff was hospitalized for a period of eight days. Under local anesthesia, amputation of the big toe was completed through the interphalangeal joint. After discharge from the hospital, plaintiff continued under medical treatment for several months, making 15 visits to her doctor. During this period plaintiff continued to complain of pain in her foot and of difficulty in walking. Examinations immediately preceding the trial, 15 months following the accident, disclosed that the remaining toes of the left foot had, to a marked degree, turned under and had taken on the appearance of a clawed foot. Exquisite tenderness over the heads of the second, third, and fourth metatarsals was noted.
Dr. A. A. Bullock, the treating surgeon, estimated a permanent disability of 35% in plaintiff's foot. Dr. Carson R. Reed, an orthopedist, to whom plaintiff was referred by Dr. Bullock and who first saw her on March 2, 1963, estimated the permanent disability in plaintiff's foot at 25%. Dr. Reed's examination disclosed mild swelling of the foot, acute tenderness over the plantar surfaces of the heads of the metatarsals, mild decalcification of the bones of the foot, and a fracture of the proximal phalanx of the fourth toe healed by fibrous union. Subsequent examinations revealed substantially the same conditions as well as the deformity of plaintiff's toes, described as a hammer-toe deformity. These later examinations also revealed fracture of the third, fourth, and fifth toes. Subjective symptoms were said to be sufficient to produce the pain, discomfort, and inconvenience of which plaintiff complained. Stiff-soled shoes, fitted with arch supports, were suggested for possible partial relief. No permanent relief was expected. Additional surgery was suggested as a possibility.
In fixing an award, we must note that the judgment as against the defendant Arnston is final and that the limit of liability for one person for one accident is, under the terms of defendant Marquette Casualty Company's policy, set at $5,000. An award in that amount is not excessive.
Therefore, for the reasons assigned, the judgment is amended and recast to read as follows:
It is therefore Ordered, Adjudged, and Decreed there be judgment herein in favor of the plaintiff, Mrs. Dessie D. Green, and against the defendants, James L. Arnston and Marquette Casualty Company, in solido, for the full sum of $5,000; and in favor of plaintiff, Mrs. Dessie D. Green, and against the defendant, James L. Arnston, in the additional sum of $2,500, with 5% per annum interest on both of said amounts from judicial demand until paid; and
It is further Ordered, Adjudged, and Decreed that the expert-witness fees of Drs. Carson R. Reed and A. A. Bullock be, and they are hereby, fixed in the sum of $100 each and taxed as cost; and
It is further Ordered, Adjudged, and Decreed that plaintiff's demands against the *218 defendant, American Home Assurance Company, be, and they are hereby, rejected; and, finally, that the judgment appealed, as herein amended and recast, be, and the same is hereby, affirmed at the cost of defendant-appellee Marquette Casualty Company, including the cost of this appeal.
Amended and affirmed.

ON REHEARING
HARDY, Judge.
We were influenced to grant a rehearing in this case because of the possibility of error in our findings of fact and the application of established legal principles with respect to the defense of lack of coverage on the part of defendant, Marquette Casualty Company.
The crucial issue presented relates to the interpretation of a provision of an endorsement to the policy involved in this suit. For the purpose of clarification we restate the appropriate provisions of the policy endorsement and the facts established in the instant case which affect its application.
The endorsement entitled "AMENDMENT OF DEFINITION OF `OWNED AUTOMOBILE'" contains the following provisions:
"1. That the definition of `owned automobile' is amended to read:
* * * * * *
(c) A private passenger * * * automobile ownership * * * of which is acquired by the named insured during the policy period, provided
* * * * * *
"2. The company insures all private passenger automobiles * * * owned by the named insured on the date of such acquisition * * *."
Unquestionably, the endorsement is supplied for the purpose of conforming to the requirement established by recent jurisprudence as particularly set forth in Indiana Lumbermens Mutual Insurance Co. v. Russell (1962), 243 La. 189, 142 So.2d 391; Pel-State Oil Company, Inc. v. Weimer (La.App., 2nd Cir., 1963, writs denied), 155 So.2d 218; and Anderson v. Fontenot (La.App., 3rd Cir., 1964), 163 So.2d 366.
The defense of non-coverage asserted in the instant case is based upon the contention that Marquette did not insure "* * * all private passenger automobiles * * * owned by the named insured * * *," at the time of defendant Arnston's acquisition of the automobile which was involved in the accident giving rise to this suit.
Our careful re-examination of the record confirms the factual conclusion expressed in our original opinion that Arnston acquired the vehicle involved within thirty days prior to the occurrence of the accident.
Recapitulating the pertinent facts, we are of the opinion the record definitely establishes the fact that Arnston owned two other automobilesa Studebaker and a Jaguarwhich were not insured by defendant, Marquette. Nor, so far as the record discloses, were these automobiles covered by insurance in any other company.
Marquette's defense is based upon the contention that it was not the insurer of all of the private passenger automobiles owned by Arnston, and, therefore, the after-acquired automobile was specifically excluded from coverage by the provision of the policy endorsement above set forth.
In answer to this argument it was asserted on behalf of plaintiff that the Studebaker and Jaguar automobiles were inoperable at the time of the accident, therefore, were uninsurable, and the inferential conclusion would be that the exclusionary endorsement did not apply. In our original opinion we accepted this conclusion upon the basis of a factual finding that the Studebaker and the Jaguar were inoperable, and, therefore, uninsurable. A *219 review of the record has convinced us that we were in error on this resolution of fact. Arnston's testimony was most unsatisfactory, evasive and uncertain, but he did testify that the Jaguar was registered in his name and that it had current Louisiana license plates and motor vehicle inspection approvals. We were led into error by that portion of Arnston's testimony to the effect that he had removed the battery and the fuel pump and that the engine had thrown a few rods. However, Arnston testified that he had performed mechanical work on the Jaguar automobile during his entire period of ownership, and he further admitted that he had driven the Jaguar in December of 1962, which was only a few weeks following the date of the accident.
Very likely it is true that the Jaguar was not operated over a considerable period of time, but it is clear that this was a temporary condition. The car had not been junked and abandoned by its owner; it was not in a condition which was beyond repair, and, as a matter of fact, it was repaired to an extent which permitted its use. This finding does not justify the conclusion that the automobile was either inoperable or uninsurable. It follows that our conclusion to the effect that the language of the policy endorsement requiring insurance of all owned automobiles did not apply was erroneous. We find no Louisiana jurisprudence on this point but we have been cited to the case of Williams v. Standard Accident Insurance Co., 158 Cal.App.2d 506, 322 P.2d 1026. In the cited case the court found that the car in question lacked wheels, tires, a windshield, headlights, fenders, bumper, radiator and grill, but, nonetheless, it was to be considered as an automobile subject to insurance coverage. The court concluded that the fact that the automobile was not actually in use while it was undergoing repairs did not change its inherent nature nor remove it from definition as an automobile.
By reason of our conclusion after review of the above facts, it follows that the judgment appealed from should be, and, accordingly, it is affirmed at appellant's cost.

On Application for Rehearing
PER CURIAM.
The opinion of this Court on original hearing of the appeal was rendered on June 10, 1964. Within the statutory delay, an application for rehearing was filed on behalf of defendant, Marquette Casualty Company. The application was granted and the opinion on such rehearing was rendered October 30, 1964. Application for rehearing on behalf of plaintiff-appellant was filed November 12, 1964.
The only issue presented by the application for rehearing on behalf of Marquette Casualty Company related to the question of coverage and this was the only question which was considered in briefs by counsel for both plaintiff and Marquette. The opening paragraph of the opinion of this Court on rehearing noted the restriction of the purpose of the rehearing to the issue of lack of coverage asserted as a defense on the part of Marquette Casualty Company.
The application for rehearing, which is now before this Court on behalf of plaintiff, first complains of the judgment of this court rendered on October 30th in holding that the sole cause of the accident was the negligence of defendant, Arnston; that Samuel H. Green, husband of plaintiff and driver of the automobile, was free from negligence, and, as a consequence, that plaintiff's demands against Green's insurer should be dismissed.
No mention whatsoever as to the above issues was made in the opinion of this court on October 30th, having already been determined in the opinion of June 10th.
In the application counsel for plaintiff further complains of the holding, on rehearing, which sustained the defense of lack of coverage on the defendant, Marquette Casualty Company.
*220 Insofar as plaintiff's application for rehearing attempts to raise the issue of negligence it was not timely filed and, therefore, this part of the application is not considered. The application is valid with respect to the issue of coverage which was decided by the opinion of the court on October 30th. However, the Court, after consideration of the application, finds no error in its conclusion, and, accordingly, the application for rehearing on this issue is denied.