GAUDIN, Judge.
Appellant is Norris Carmadelle, who was driving his 1971 Mercury automobile on the afternoon of December 15, 1977, when he executed a left turn into the path of an oncoming motorcycle, causing a collision.
The motorcycle driver, Willie J. Barnes, instituted suit in the district court against Carmadelle, who responded by (1) filing a reconventional demand against Barnes and (2) bringing a third party action against State Farm Mutual Automobile Insurance Company, contending that his Mercury was covered by a State Farm policy.
*494 Following a non-jury trial, the district judge awarded $3,847.13 to Barnes and dismissed Carmadelle’s reconventional demand and his third party petition. It is from this judgment that Carmadelle appeals.
After reviewing the testimony and evidence and the jurisprudence of the State, we cannot say that the trial judge’s determinations were manifestly erroneous, and we affirm the decision adverse to Carma-delle.
ACCIDENT FACTS
Carmadelle was proceeding westerly on Fourth Street in Westwego, Louisiana, while Barnes was also on Fourth Street and driving in an easterly direction, toward Car-madelle.
When Carmadelle reached Laroussini Street, he went into a left turning maneuver. Carmadelle testified that he “... saw no object whatsoever, no automobile or motorcycle ...” and that “.. . some high-powered object comes flying through the air and struck me on the side.”
Barnes, the “high-powered object” on his motorcycle, said that he was in first gear and “... travelling around 15 miles an hour ...” when Carmadelle’s automobile “... just made a fast turn right in front of me ...”
Carmadelle could not explain why he failed to see the approaching motorcycle. There were no obstructions and it was daylight.[1]
There was nothing to support Carma-delle’s contention that Barnes was driving in excess of 15 miles per hour except possibly the testimony of James Cowans. This witness did not see the accident, but he testified that he believed he saw Barnes “... coming down Louisiana Street[2] at a high rate of speed ...” several minutes before the collision.
Cowans, however, was unable to positively identify Barnes, and he (Cowans) could not testify as to the motorcycle’s rate of speed just prior to the accident. Cowans did say that he was a friend of Carmadelle and had “... been knowing him seven or eight years.”
The trial judge, from the bench, stated: “... There has been no testimony either by Mr. Carmadelle or Mr. Cowans to establish the speed of the Barnes vehicle prior to impact, and even if the vehicle was exceeding the speed limit, the proximate cause was the turning vehicle which had the obligation to yield the right of way. That ... caused the accident ...”
We agree.
THE INSURANCE ISSUE
On December 15, 1977, State Farm insured two automobiles owned by Carma-delle, a 1972 Cadillac under one policy and a 1973 Pontiac under a second policy. Appellant claims coverage for the 1971 Mercury, the one involved in the accident, under provisions of the Cadillac policy.
This policy covers Carmadelle’s owned automobiles, and an “owned automobile” is described as:
“(a) a private passenger ... automobile described in this policy for which a specific premium charge indicates that coverage is approved.
“(b) a trailer ...
“(c) a private passenger ... automobile ownership of which is acquired by the named insured during the policy period, provided:
(1) it replaces an owned automobile as defined in (a) above, or
(2) the company insures all private passenger and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, or
“(d) a temporary substitute automobile.”
*495 (Underlining provided.)
Carmadelle contends (1) that the Mercury replaced the Cadillac described in the policy and (2) that State Farm insured all of Car-madelle’s vehicles and was notified of the purchase of the Mercury, thereby making both section (c), subsection (1) and section (c), subsection (2) applicable.
The Cadillac, according to Carmadelle, was inoperable due to a breakdown and was in a repair shop from November 18, 1977, until after the sued-on accident. The Mercury had been purchased on October 25, 1977.
In his assigned Reasons for Judgment, the trial judge stated:
“The court was not convinced from the testimony of Norris Carmadelle that he purchased the 1971 Mercury with the intent to replace the 1972 Cadillac. In fact, the evidence and testimony support a finding that Norris Carmadelle continued to drive the 1972 Cadillac for approximately three (3) weeks after the purchase of the 1971 Mercury ... Further, Norris Carmadelle testified that he did in fact drive both the 1971 Mercury and the 1972 Cadillac prior to November 18, 1977 ...”
Carmadelle cites Ray v. State Farm Mutual Automobile Insurance Company, 152 So.2d 566 (La.App.2nd Cir.1963). In Ray, the court concluded from the facts and circumstances that the insured actually intended to completely and permanently replace one vehicle with another.
The vehicle named in the Ray policy was inoperable and had been placed in a rear yard and jacked up off the ground. When the second vehicle was purchased, the tires were taken off the designated vehicle and put on the second, or replacement, vehicle. The named vehicle was not in use when the second vehicle was obtained, and it (the designated vehicle) was never driven again.
Carmadelle, on the other hand, was driving both the Cadillac and Mercury after October 25, 1977; and the record supports the trial judge’s finding that when Mr. Car-madelle purchased the Mercury, he was using it “... in addition to, not in replacement of, his other vehicle.”
After the Cadillac was repaired, it was returned to Carmadelle.
Concerning possible coverage under section (c), subsection (2), the trial judge found that Carmadelle at the time of the accident owned a 1966 Pontiac Catalina; thus, all of his vehicles were not insured by State Farm, rendering section (c), subsection (2) inapplicable.
Carmadelle said that the 1966 Pontiac had a “burnt motor” and wasn’t in use. When asked about the last time this automobile had been driven, he replied:
“During the last — oh, I don’t know, during the late ’60’s, beginning of the late middle or the late — middle ’70’s — late ’77. Early ’78 is when we were running a campaign or something and they blew the motor on it ...”
From this and other testimony, the trial judge found “... that Norris Carmadelle was the owner of a 1966 Pontiac Catalina on October 12, 1977, the date he acquired the 1971 Mercury ...” and that the 1966 Pontiac was repairable and therefore insurable. Carmadelle had the 1966 Pontiac insured until June 4, 1975, when it was replaced on a State Farm policy by the 1972 Cadillac.
Although taken off the insurance policy, the 1966 Pontiac no doubt remained in Car-madelle’s possession and was used at least to some extent after June, 1975. We cannot say the trial judge erred in his finding regarding this automobile.
This legal problem was first addressed by a Louisiana appellate court in Green v. American Home Assurance Company, 169 So.2d 213 (La.App.2nd Cir.1964). There, an automobile that did not have a battery or fuel pump and had an engine that “... had thrown a few rods ...” was found to be repairable. The relevant insurance provisions in Green were synonymous with the terms and conditions of Carmadelle’s State Farm policy.
The subject automobile in Green, as in Carmadelle’s case, had been neither junked nor abandoned but remained owned by and in the possession of the insured.
*496 The instant record supports the trial judge’s finding that Carmadelle’s 1966 Pontiac was, as stated in Green, “.. . not in a condition which was beyond repair ...” Carmadelle’s nebulous testimony indicates this automobile may have been driven in 1977 and in 1978.
Also, while Carmadelle testified that he personally notified State Farm of the acquisition of the Mercury, the testimony of several other witnesses places this contention in serious dispute, further depreciating Car-madelle’s reliance on section (c) subsection (2) for coverage.
CONCLUSION
We will not upset a trial court’s findings unless clearly wrong, particularly if the determinations involve credibility of witnesses. See Canter v. Koehring, 283 So.2d 716 (La.1973); O’Rourke v. Tracy, 375 So.2d 747 (La.App.4th Cir.1979); Huisman v. Southern General Ins. Co., 203 So.2d 404 (La.App.4th Cir.1967), and numerous similar decisions.
Here, the preponderance of evidence sustains the decrees in favor of Barnes and State Farm against Carmadelle.
AFFIRMED.

. Approximately 4:15 p.m.

. A street near the Fourth Street-Laroussini Street intersection.