453 So.2d 986 (1984)
Guy B. LACOSTE
v.
Emmett PRICE, et al.
No. 83 CA 0918.
Court of Appeal of Louisiana, First Circuit.
June 26, 1984.
Charles B. Colvin and Jack Harang, New Orleans, for plaintiff, appellant, Guy B. Lacoste.
Steven B. Witman, New Orleans, for plaintiff, third party-plaintiff, Associated Indem. Corp., Appellee.
William R. Brough, New Orleans, for third party-defendant and third party-plaintiff, Emmett Price, appellee.
Edward P. Lobman, Metairie, for defendant and third party-defendant, State Farm etc., appellee.
*987 Before SHORTESS, LANIER and CRAIN, JJ.
LANIER, Judge.
This is a suit for damages in tort resulting from a collision between an automobile owned by Guy B. Lacoste and a pickup truck owned by Emmett L. Price, Jr. Named as defendants were Carl Alford (driver of the truck) and his liability insurer, Allstate Insurance Company (Allstate); Price and his liability insurer, State Farm Mutual Automobile Insurance Company (State Farm); and Lacoste's uninsured motorist insurer, Associated Indemnity Corporation (Associated). Price filed a third party demand against State Farm, and Associated filed third party demands against Alford, Price, State Farm and Allstate.
Prior to trial, Lacoste settled with Allstate for $9,500 (out of a $10,000 policy), reserving his rights against the remaining defendants. At trial, Lacoste and Associated stipulated that if no coverage was provided by State Farm, Associated would settle with Lacoste for $5,000. After presentation of his case, Lacoste moved to nonsuit his claim against Price. After the trial, the district court rendered judgment in favor of Lacoste and against Associated for $5,000, in favor of Associated and against Price for $5,000, in favor of Price dismissing Lacoste's claims against him as of nonsuit and in favor of State Farm dismissing Lacoste's claim and Price's and Associated's third party demands. Lacoste took this devolutive appeal contesting the dismissal of his claim against State Farm. No other party appealed or answered the appeal.

FACTS
Effective September 1, 1978, Price secured three separate policies of liability insurance from State Farm on the following vehicles: (1) 1970 Plymouth Valiant policy period ending February 12, 1979; (2) 1965 Plymouth Valiantpolicy period ending January 25, 1979; and (3) 1967 Dodge Dartpolicy period ending March 1, 1979. Price also owned a wrecker truck which was insured by another company. Price owned several inoperable vehicles from which he salvaged parts to fix the vehicles he operated.
On November 15, 1978, Price purchased a 1971 Dodge 3/4 ton pickup truck "as is" from the Government Surplus office in Mississippi for approximately $600-$800. The truck was inoperable when acquired and had to be towed back to Price's home in Pearl River, Louisiana. In approximately December of 1978 or January of 1979, Price decided to make the truck operable and secured a Louisiana license plate for it.
On January 25, 1979, February 12, 1979, and March 1, 1979, the three policies secured by Price from State Farm on September 1, 1978, expired. Price renewed each of these policies prior to its expiration date. Price did not give notice to State Farm of the acquisition of the truck on November 15, 1978, during the policy period of any of these three policies, nor did he request State Farm to provide coverage for the truck.
On approximately March 11, 1979, Price began repairing the truck to get it into running condition. It took three or four days of work to get the truck in operating condition.
On March 21, 1979, Carl Alford was operating the truck owned by Price in an easterly direction on Louisiana Highway 41 in St. Tammany Parish, Louisiana. At this same time and place, Guy Lacoste was operating his 1971 Oldsmobile automobile in a westerly direction. A collision occurred when the truck crossed the center line of the highway and struck Lacoste's vehicle head-on. As a result of this collision, Lacoste sustained property damage to his vehicle, loss of wages of $3,234.39, medical bills and expenses of $5,560.35 and personal injuries. Price first reported his acquisition of the truck to State Farm when he reported the accident.

INSURANCE COVERAGE ON TRUCK
Each of the State Farm policies provides in pertinent part as follows:

*988 "owned automobile" means
(a) a private passenger, farm or utility automobile described in this policy for which a specific premium charge indicates that coverage is afforded,
. . . . .
(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
(1) it replaces an owned automobile as defined in (a) above, or
(2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile, ...
. . . . .
"utility automobile" means an automobile, other than a farm automobile, with a load capacity of fifteen hundred pounds or less of the pick-up body, sedan delivery or panel truck type not used for business or commercial purposes;
The district court gave the following reasons for judgment:
Although this Dodge pick-up was inoperable when purchased, it was repaired in only three or four days' time. This Court finds that this Dodge pick-up had not lost its identity as an automobile under the terms of State Farm's policy when it was initially purchased by Price. Even though Price was not sure when he originally bought this pick-up whether he was going to sell same for parts or make it operable, the fact remains that the truck was operable with the exception of a bad clutch. The fact that this vehicle was badly rusted did not keep it from being classified as an automobile under this policy.
This Court does not find that the above quoted policy provision is ambiguous. This provision applies clearly to newly acquired automobiles and gives the prospective insured thirty days after the date of acquisition of such an automobile to notify the insurance company of his acquisition with insurance being provided in the meantime. However, should the prospective insured acquire a vehicle which has not lost its identity as such and does not report the acquisition of this vehicle within thirty days of purchase, then the insured must actually secure insurance on same before driving it. Nor is this unfair to the prospective insured. For jurisprudence not in point but analogous, see Mahaffey v. State Farm Mutual Automobile Insurance Company, 175 So.2d 905 (La.App. 3rd Cir., 1965) involving an uninsured vehicle which had, at one time, been insured by defendant insuror [sic]. Therefore, State Farm did not have a policy of insurance covering this 1971 Dodge pick-up when this accident occurred.
Price contends on appeal that the district court erred in finding that the truck was an "owned automobile" at the time of acquisition (November 15, 1978), thus precluding coverage because of noncompliance with the notice provisions of the State Farm policy. Price argues that the truck became an "owned automobile" only when it was made operable less than ten days before the accident and that any other interpretation of the policies would be contrary to the intention of the parties. Price also argues that the State Farm policies are ambiguous because they do not adequately define the term "automobile". Thus, the sole issue on appeal is at what point in time did the truck become an "owned automobile" within the purview of the State Farm policy?
Courts must give legal effect to the provisions of an insurance policy according to the true intent of the parties, which is determined by the wording of the policy when its provisions are clear and unambiguous and do not lead to absurd consequences. Gulf Building Services, Inc. v. Travelers Indemnity Company, 435 So.2d 477 (La.App. 4th Cir.1983), writ denied, 441 So.2d 749 (La.1983); Schmieder *989 v. State Farm Fire and Casualty Company, 339 So.2d 390 (La.App. 1st Cir.1976), application denied, 341 So.2d 895 (La.1977). If there is doubt or ambiguity as to the meaning of a provision in an insurance policy, the policy must be construed liberally in favor of the insured and against the insurer. Credeur v. Luke, 368 So.2d 1030 (La.1979).
The record establishes the following pertinent facts:
(1) Price did not have the truck listed in any of the State Farm policies and did not pay a specific premium for coverage;
(2) The ownership of the truck was acquired by Price during the policy periods of the three policies purchased on September 1, 1978;
(3) At the time that the truck was acquired, it did not replace one of the automobiles covered by the three State Farm policies purchased on September 1, 1978; and
(4) Price did not notify State Farm of the acquisition of the truck during the policy periods of the three policies purchased on September 1, 1978, or within thirty days after the date of the truck's acquisition.
(We assume for purposes of this opinion that State Farm insured all "automobiles" owned by Price on the date of acquisition of the truck.) The pertinent portion of the State Farm policy conditions coverage on acquisition of ownership during the policy period. Once there is acquisition of ownership, the notification provisions are triggered. The policy does not require that an "automobile" be operable at the time that ownership is acquired. Thus, by the plain and unambiguous language of the policy, coverage is contingent upon acquisition of ownership and not acquisition of operability.
Contentions made by Price in the instant case were made in Collard v. Globe Indemnity Co., 50 So.2d 838 (La.App. 1st Cir.1951). On July 11, 1947, Collard obtained an insurance policy covering a 1940 Diamond 1½ ton truck, which policy remained in effect until July 11, 1948. In November or December of 1947, Collard purchased an old Diamond T 1½ ton truck which would not run and had to be completely overhauled and rebuilt. He took this truck to his shop where he proceeded to overhaul it, complete with a wrecker boom and winch, and made this truck into a wrecker. The rebuilding was completed on January 18, 1948, and the vehicle was put into service on that date. The rebuilt truck was involved in an accident on February 14, 1948. Collard did not give notice of acquisition of the second truck until after the accident.
Collard contended that there was no delivery (acquisition) of the second truck until it was fit for use on January 18, 1948, and that since the accident occurred within thirty days of that date that the second truck was covered. In disposing of this contention, the court observed as follows:
The language used in the automatic insurance clause, supra, is neither uncertain nor ambiguous. It is plainly to the effect that any insured acquiring ownership of another automobile and notifying the company within 30 days following date of its delivery to the insured that such insurance as is afforded by the policy applies to the acquired and delivered automobile if it replaces an automobile described in the policy. In the present case, the petition alleged that the ownership of the old salvaged Diamond T. log truck was acquired in November or December, 1947, and that "petitioner took said truck to his auto shop."
Article 2477 of the Revised Civil Code defines "delivery" as the "transferring of the thing sold into the power and possession of the buyer." According to plaintiff-appellant's petition, the old Diamond T. 1½ ton truck was transferred into the "power and possession" of the plaintiff-appellant in November or December, 1947. Consequently, there was delivery of the vehicle in November or December, 1947, and, therefore, on the face of the petition, more than 30 days had elapsed before the notice required *990 under the terms of the automatic insurance clause was given to the defendant-appellee. 50 So.2d at 840.
Collard also contended that he did not have an insurable interest in the second truck until its rebuilding was completed. The Court disposed of this contention as follows:
It is contended that the plaintiff had nothing to insure or no insurable interest in this old Diamond T 1½ ton truck on the date of its acquisition and delivery to him, and it was only after adding to it and building it into a wrecker which was completed on January 18th, 1948 that there was anything to insure. While this may be true, the plain provision and language of the contract should not be stretched or warped so as to include or afford a protection to the insured not intended under a reasonable and fair interpretation of the policy. The plain condition of the policy meant that the insured, in order to take advantage of the automatic provision should, within thirty days of the acquisition and delivery to him of another automobile, have put it in such condition that it would be insurable and could have replaced the automobile originally covered. For example, in the present case if the plaintiff had been able to complete the repairs or changes he wished to make in the old Diamond T truck which he purchased and which was delivered to him in November or December, 1947 on or before 30 days from the date of its delivery, and had notified the plaintiff within the thirty days of the replacement of the original wrecker, then the automatic insurance provision would have applied in this case. To hold in the present case that the plaintiff had thirty days from January 18th, 1948, the date he alleged he completed the conversion of the old truck into a wrecker and replaced the insured wrecker, would be to read or strike out the word "delivery" in the automatic insurance provision. The word "delivery" as used in the policy could not be given a meaning of say "delivery for replacement purposes." Throughout this provision it is clear that it means a manual delivery of the newly acquired automobile or motor vehicle, and then the insured may, if he so desires, replace an automobile already insured under the policy with the other one provided he notifies the insurance company within thirty days from the date of delivery to him. 50 So.2d at 843.
In Green v. American Home Assurance Company, 169 So.2d 213 (La.App. 2nd Cir. 1964), the tort-feasor owned four automobiles, one which was insured and operable, one which was acquired less than thirty days prior to the accident and which was involved in the accident and two which were inoperable. The insurer of the first vehicle denied coverage on the grounds that all of the tort-feasor's vehicles were not insured by it at the time that the second (accident) vehicle was acquired. On original hearing, the court found that since the third and fourth vehicles were not operable that they were not required to be covered as a condition precedent to coverage for the newly acquired vehicle. On rehearing, the court reversed itself and concluded that there was no coverage with the following language:
Very likely it is true that the Jaguar was not operated over a considerable period of time, but it is clear that this was a temporary condition. The car had not been junked and abandoned by its owner; it was not in a condition which was beyond repair, and, as a matter of fact, it was repaired to an extent which permitted its use. This finding does not justify the conclusion that the automobile was either inoperable or uninsurable. It follows that our conclusion to the effect that the language of the policy endorsement requiring insurance of all owned automobiles did not apply was erroneous. We find no Louisiana jurisprudence on this point but we have been cited to the case of Williams v. Standard Accident Insurance Co., 158 Cal.App.2d 506, 322 P.2d 1026. In the cited case the court found that the car in question lacked wheels, tires, a windshield, headlights, fenders, bumper, radiator and grill, but, *991 nonetheless, it was to be considered as an automobile subject to insurance coverage. The court concluded that the fact that the automobile was not actually in use while it was undergoing repairs did not change its inherent nature nor remove it from definition as an automobile. 169 So.2d at 219.
In Mahaffey v. State Farm Mutual Automobile Insurance Company, 175 So.2d 905 (La.App. 3rd Cir.1965), the defendant, Frensley, owned and operated at one time seven delivery vehicles which were insured under a fleet policy. Three of the vehicles became inoperable, and on November 10, 1961, the fleet policy was cancelled and separate policies were issued on the four vehicles in operation. Two of these four vehicles became "laid up" for repairs. Frensley decided to put another vehicle into operation by installing a new motor into the "shell" of a 1958 Volkswagen panel truck (one of the three vehicles that was inoperable). The truck was repaired on February 4, 1962, and was involved in an accident on February 6, 1962. Frensley did not contact State Farm to change one of the four policies to show the Volkswagen as an insured vehicle prior to the accident. In the district court, Mahaffey argued that the Volkswagen was covered under any of the four State Farm policies because when it became inoperable, it lost its identity as an "automobile", and when it became operable on February 4, 1962, it acquired the status of a "newly acquired automobile". The district court ruled that because the Volkswagen was inoperable for a time and subsequently was repaired and became operable did not place it in the category of a "newly acquired automobile". The Court of Appeal agreed with this reasoning with the following language:
An automobile, although in need of a new motor, is still an automobile, as this term is ordinarily understood. Frensley did not acquire an automobile. He only put a new motor in an old automobile he already owned.
Furthermore, we think this construction is consistent with the intention of the contracting parties. The obvious purpose of the provision regarding "newly acquired automobiles" is to provide automatic coverage, without even the necessity of notice to the insurer, for an automobile acquired by the named insured during the policy period to replace a vehicle covered by the policy. But this provision was not intended to cover another automobile owned by the insured at the time the policy issued and used to replace the described vehicle. To hold otherwise, in a situation like the present, would permit an assured with a number of vehicles, some in operating condition and some in need of repair, to put them in and out of service, contending that all are covered by the policies, when in fact no premiums are being paid for some of them. This may be possible under a fleet policy, but not under these separate policies. 175 So.2d at 909.
In Barnes v. Carmadelle, 424 So.2d 492 (La.App. 5th Cir.1982), State Farm insured a 1972 Cadillac and a 1973 Pontiac owned by Carmadelle under separate policies. Carmadelle also owned a 1966 Pontiac which had a "burnt motor" and was not in use. The 1966 Pontiac had been insured by State Farm until June 4, 1975, when it was replaced on the policy by the 1972 Cadillac. On October 25, 1977, Carmadelle acquired a 1971 Mercury which was involved in an accident on December 15, 1977. Carmadelle contended that the Mercury was covered under the Cadillac policy. The district court found that the 1966 Pontiac was repairable and therefore insurable and denied coverage, in part, because all of the automobiles owned by Carmadelle were not insured by State Farm. The Court of Appeal affirmed holding, in part, that Carmadelle's 1966 Pontiac was not in a condition beyond repair and therefore could be classified as an automobile owned by him for purposes of the State Farm policy.
The above jurisprudence indicates that, although an automobile is inoperable at the time that its ownership is acquired, it is considered as a newly acquired automobile if it is repairable. However, if the automobile *992 is abandoned, junked or not repairable, it does not fall in this category. The truck in the instant case was repairable, and its ownership was acquired on November 15, 1978. The truck did not acquire the status of a "newly acquired automobile" in March of 1979.
The cases of Glen Falls Insurance Company v. Gray, 386 F.2d 520 (5th Cir.1967) and Canal Insurance Company v. Brooks, 201 F.Supp. 124 (W.D.La.1962), aff'd, 309 F.2d 751 (5th Cir.1962) are factually distinguishable from the instant case. In Glen Falls, Gray secured a liability insurance policy covering two automobiles with a policy period of February 12, 1960, to February 12, 1961. On January 10, 1961, Gray came into possession of a 1955 Oldsmobile under an agreement to purchase. Gray went to his insurance agency and reported his acquisition of possession of the Oldsmobile but advised that he did not desire it to be covered by his policy because it had to undergo extensive repairs and that after the repairs were completed, he would decide whether to keep the Oldsmobile or sell it. Gray secured a renewal policy for a policy period of February 12, 1961, to February 12, 1962, on the two automobiles covered by the previous policy. The Oldsmobile was not placed on the renewal policy at that time. On February 20, 1961, Gray eliminated one of the automobiles from this policy and on that same date acquired legal title to the Oldsmobile. At the end of April 1961, the repairs on the Oldsmobile were completed, and Gray decided to keep it and drive it. In July of 1961, Gray and a business associate drove in the Oldsmobile to the office of his insurer's agent. Gray told the agent that he decided to keep the Oldsmobile and that he wanted it covered by his policy. Gray testified that at the end of July or the first part of August, he telephoned the agent to confirm his coverage, and he understood from the agent that the Oldsmobile was covered by the policy. Approximately a week or ten days later, the agent died and his records contained no reference pertaining to these conversations (and apparently there was no endorsement on the policy to show this change). On January 27, 1962, Gray was driving the Oldsmobile and was involved in an accident in which two persons were killed. The insurer denied coverage under the policy. At the subsequent trial, a jury found that during July 1961, a conversation between the agent and Gray took place with reference to insurance coverage for the Oldsmobile and that Gray informed the insurer of his ownership of the Oldsmobile for the purpose of coverage. The jury deadlocked on whether or not there was an agreement between the agent and Gray that the Oldsmobile would be covered by the insurer under the existing policy. The district court subsequently entered a partial summary judgment in favor of Gray declaring that the Oldsmobile was covered by the insurer under the previously existing policy. The above facts show that the Oldsmobile was not initially covered because Gray specifically told the insurer that he did not want it covered. The case factually turned on whether or not there was an agreement between the parties to cover the Oldsmobile in July or August of 1962. The district court ultimately determined as a fact that such an agreement existed. In any event, Gray gave notice of his acquisition of ownership of the vehicle and his intention to have coverage during the policy period in which he acquired ownership and prior to the accident. In this posture, the observation that acquisition of ownership may properly be construed as comprehending the acquisition of an operable vehicle is dictum. Further, the opinion limits itself to the particular facts of the case.
In Canal, Brooks advised the insurer that he owned two uninsured trailers which had been abandoned as junk. The agent for the insurer advised Brooks that it was unnecessary to place the trailers under his insurance policy which covered nine vehicles used in his trucking business. On August 15, 1959, during the policy period, Brooks acquired ownership of a used automobile. On August 17, 1959, while driving this newly acquired automobile, Brooks was involved in a collision. On August 21, *993 1959, Brooks notified the insurer of the newly acquired automobile and of the accident. The insurer denied coverage claiming that all automobiles owned by Brooks were not insured under the policy. (In addition to the two junked trailers, the insurer also made claims concerning a boat trailer and a trailer leased to a third party. A discussion of the disposition of the boat trailer and the leased trailer is not pertinent herein.) After considering the evidence concerning the condition of the two trailers, the court found that they were in fact junked trailers which were "totally unserviceable" and held that there was no reason to include them in the policy. In addition, these trailers were not included in the policy after Brooks discussed them with the insurer's agent. In the instant case, the truck was not junked or abandoned, and Price made no attempt to obtain coverage or give notice during the initial policy period.

DECREE
For the foregoing reasons, the judgment of the trial court is correct and is affirmed at the appellant's cost.
AFFIRMED.