538 So.2d 625 (1988)
RIVER ROAD CONSTRUCTION, INC.
v.
CANAL INDEMNITY COMPANY.
No. CA 87 0443.
Court of Appeal of Louisiana, First Circuit.
November 7, 1988.
*626 Rainer Lorenz, Hammond, for plaintiff, appellee.
Gary M. Zwain, New Orleans, for defendant, appellant.
Before COVINGTON, C.J., and LOTTINGER, EDWARDS, WATKINS, SHORTESS, CARTER, SAVOIE, LANIER, CRAIN, ALFORD, LeBLANC and FOIL, JJ.
FOIL, Judge.
This appeal involves a question of coverage under an "all risk" contractors equipment policy. Plaintiff River Road Construction Company, Inc., brought this action against its insurer, defendant Canal Indemnity Company, alleging coverage of damage to an insured Link Belt 108-B crane. At trial, the parties stipulated to the facts and the court entered judgment for the insured in the amount of $28,522.60 with legal interest thereon from date of judicial demand. The insurer has appealed from this judgment, assigning the following as error:
(1) The trial court went beyond the evidence in reaching the factual conclusions that operator error caused the damage to the crane and that the crane's overturn caused the damage to the boom.
(2) The trial court erred in awarding interest from date of judicial demand.
The statements of three employees of the insured (the operator of the crane and two witnesses to the accident) were stipulated to and submitted into evidence. This evidence reveals the following facts: The crane was engaged in performing sheet pile driving operations at the time the damage was sustained. In the course of this operation, a sheet had been hooked up to the crane and was being lifted when it began to swing back and forth. In order to stop this, the operator set the sheet down, causing the boom to come backwards through the boomstops, and up and over the cab of the crane. The crane tilted and turned over, and the boom landed on the ground behind the crane. The damage to the crane and the damage to the boom are the subject matter of the claims filed by the insured.
The insurer rejected the insured's claims on the grounds that the damage to the crane was not covered because the loss did not result from an external cause, and that the damage to the boom was not covered because it was not incurred by one of the specific perils listed in the policy. The coverage clause of the policy involved in *627 this case reads, in pertinent part, as follows:
3. THIS POLICY INSURES (Except as hereinafter excluded)
Against all risks of direct physical loss of or damage to the property insured from any external cause ..., except as respects boom(s) in excess of 25 feet in length, which are insured hereunder only against loss or damage directly caused by fire, lightning, ... or overturning of the unit of which it is a part ... [Emphasis added]
The relevant inquiry in assignment of error number one is whether or not the losses sustained by the insured were covered under the provisions of the foregoing policy clause. The trial court reviewed the evidence and reached the following factual conclusions in its written reasons for judgment:
"... [T]he written statements of the three River Road employees and common sense lead the Court to the conclusion that it is more probable than not that the accident and corresponding damage to the equipment was the result of the circumstances of the incident and the actions of the crane operator rather than an internal defect of the crane ... In addition, the policy limitation for booms over 25 feet is also fulfilled, so as to permit recovery for the boom damage. It is clear from the pictures ... that the crane and boom were overturned by the accident, thus meeting that policy condition of coverage ..."
Canal Indemnity Company argues that no evidence was presented showing that the damage incurred by the crane resulted from operator error as opposed to a malfunction. Defendant further contends that there was no evidence suggesting that the boom damage was caused by the crane's overturn. Defendant claims that, instead, the boom was damaged when it struck the crane's cab and that this caused the crane's overturn.
After a thorough examination of the record on appeal, we conclude that the trial court's factual conclusions are supported by a preponderance of the evidence and are not manifestly erroneous. We agree that it was the actions of the crane operator in suddenly relieving the boom of its heavy load which caused the boom to exceed its normal vertical orientation. This clearly constitutes an "external cause" within the ordinary meaning of those words. Moreover, we also agree that the fact that the crane and boom were overturned in this accident constitutes a named peril for which the policy specifically provides coverage. After the crane tilted and overturned, the boom landed on the ground behind it. It is immaterial whether or not the boom was the cause of the crane's overturn, only that the boom was damaged as a result thereof.
Courts must give legal effect to the provisions of an insurance policy according to the true intent of the parties, which is determined by the wording of the policy when its provisions are clear and unambiguous and do not lead to absurd consequences. If there is doubt or ambiguity as to the meaning of a provision in an insurance policy, the policy must be construed liberally in favor of the insured and against the insurer. Lacoste v. Price, 453 So.2d 986 (La.App. 1st Cir.1984).
We feel that the trial court's findings are in accord with the above. Thus, assignment of error number one is meritless.
By means of assignment of error number two, Canal Indemnity Company contends that the trial court erred in awarding legal interest from date of judicial demand. Rather, it claims that interest is owed from the time the debt becomes due, which in this case would be from the date of judgment. We disagree.
In the recent case of Mini Togs Products, Inc. v. Wallace, 513 So.2d 867 (La. App.2d Cir.), writs denied, 515 So.2d 447, 451 (La.1987), the court stated as follows:
Although the issue as presented to us in this case is whether legal interest should run from date of judicial demand or from date of judgment, neither of those dates are specifically mentioned in the codal articles providing for legal interest on debts or claims arising out of contracts. *628 Cases involving disputes over the time of commencement of legal interest have often been resolved by reference to the time the debt was due, or when the obligor was put in default, or when the claim became liquidated or ascertainable. Often the dispute has been whether legal interest commenced to accrue upon judicial demand or at an earlier date.
The most recent decision of the Louisiana Supreme Court dealing with legal interest on a claim arising out of a contractual relationship is Alexander v. Burroughs Corporation, [359 So.2d 607 (La. 1978)] ... We read the decision in that case as holding that a claim arising out of a contract, whether liquidated or not, bears legal interest from judicial demand or from such earlier date when the claim became ascertainable and due.
. . . . .
In using the term "ascertainable" the court did not mean that the precise amount of the claim need be liquidated or established without dispute in order for legal interest to commence in a contract claim ... What was meant was that a debt or claim for the payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date. [Citation added]
The judgment in this case awarding legal interest from date of judicial demand is correct.
In brief on appeal, plaintiff-appellee River Road Construction Company, Inc. specifies as error the trial court's failure to find the defendant's conduct arbitrary and capricious and to award penalties and attorney's fees. The plaintiff has not appealed the decision below, nor answered defendant's appeal. As such, plaintiff's arguments contained in brief will not be considered. La.Code Civ.P. art. 2133; See Mackie v. Crown Zellerbach Corporation, 444 So.2d 166 (La.App. 1st Cir.1983).
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are taxed to appellant.
AFFIRMED.
CARTER and LeBLANC, JJ., concur.
WATKINS, J., concurs for the reasons assigned.
LANIER, J., agrees with the disposition of assignment of error number one, but only concurs in the result of assignment of error number two and will assign reasons.
SAVOIE, J., concurs for the reasons assigned by LANIER, J.
LANIER, Judge, concurring.
We agree with the holding and rationale of assignment of error number one and concur in the result of assignment of error number two.
The reason this court heard this case en banc was to clarify the confused and conflicting jurisprudence on the issue of legal interest on contractual claims. The majority opinion does not achieve this goal. Instead, the majority opinion adds to the confusion.

ADDITIONAL FACTS
The majority opinion fails to consider facts in the record which are pertinent in determining when legal interest commenced to run on the insured plaintiff's claim.
This suit went to trial on a joint stipulation of facts. The crane was damaged on March 13, 1985. By letter dated March 19, 1985, the plaintiff advised its insurer "of the extent of loss and the cost of parts for repair" of $39,022.60. This claim is subject to deductibles of $10,500. The pertinent documents are filed in the record and are stamped as received on April 1, 1985. By letter dated June 19, 1985, the insurer denied the claim on coverage grounds. This suit (judicial demand) was filed on July 31, 1985. The prayer of the suit requests "legal interest from date of judicial demand until paid." Judgment in favor of the plaintiff was rendered on August 25, 1986. *629 This judgment granted legal interest on the award from July 31, 1985 (date of judicial demand), until paid.

COMMENCEMENT OF LEGAL INTEREST ON CONTRACTUAL OBLIGATION
The insurer asserts the trial court erred in awarding legal interest from date of judicial demand. The insurer contends that, pursuant to La.C.C. art. 2000, legal interest on a contract commences from the date the contractual debt is due; and on the debt in the instant case, that date is the date of judgment (August 25, 1986).
The majority opinion relies on Alexander v. Burroughs Corporation, 359 So.2d 607 (La.1978) and Mini Togs Products, Inc. v. Wallace, 513 So.2d 867 (La.App. 2nd Cir.), writs denied, 515 So.2d 447 and 451 (La. 1987) as authority for its holding. A review of these authorities shows that, while they are enlightening, neither is controlling. Alexander was a redhibitory action arising from the sale of a computer. Counsel for the plaintiff made formal demand on the defendant for rescission of the sale on June 29, 1972. Suit was filed on October 25, 1972. On March 8, 1977, the trial court rendered judgment in favor of the plaintiff and ordered rescission of the sale. The court of appeal modified the trial court's judgment and gave legal interest on the plaintiff's award from the date of the trial court's judgment (March 8, 1977). The plaintiff sought supervisory relief from the Louisiana Supreme Court, asserting that he was entitled to legal interest from date of judicial demand (October 25, 1972), rather than from date of judgment. The defendant responded that, since the sale was not rescinded until there was a judgment ordering it, interest should not run until the date of judgment. The court ruled the plaintiff was entitled to legal interest from the date the demand for rescission was made (June 29, 1972) with the following rationale:
One of the incidents of the obligations of contracts is that the one who violates those obligations is liable for damages "which the other party has sustained by his default." C.C. 1930. Damages are due "from the moment" of an active violation of a contract (C.C. 1932) and from "the time that the debtor has been put in default" when the breach has been passive. C.C. 1933. A debtor may be put in default "either by the commencement of a suit, by a demand in writing...." or in other ways. C.C. 1911. "The damages due for delay in the performance of an obligation to pay money are called interest." C.C. 1935. "All debts shall bear interest at the rate of seven per centum per annum from the time they became due, unless otherwise stipulated." C.C. 1938.
. . . .
Except for attorneys' fees we find that plaintiffs' claim was ascertainable on the date of formal demand for "cancellation" of the purchase by letter dated June 29, 1972 from the attorney for Percy Alexander to Burroughs Corporation when defendant was put in default,5 and hence interest should run from that date, rather than from date of judgment or from date of judicial demand.6 The amount of attorneys' fees due was not ascertainable until awarded by the court, and interest, therefore, will run on that demand only from the date awarded.
5 This is to be contrasted with an action in quantum meruit where the amount is not ascertainable until the date of judgment. See Sugar Field Oil Co., v. Carter, 214 La. 586, 38 So.2d 249 (1949); Brummett v. Hamel's Dairy, Inc., 324 So.2d 502 (2d Cir.1975); Custom Builders & Supply, Inc., v. Revels, 310 So.2d 862 (3d Cir.1975); Pittman & Matheny v. Davidge, 189 So.2d 706 (1st Cir.), writ denied, 249 La. 768, 191 So.2d 143, 249 La. 771, 191 So.2d 144 (1966).
6 It might be argued that, since plaintiff's only prayed for interest from date of judicial demand, they should be so limited. See B. Segall Company, Inc., v. Trahan, 276 So.2d 340 (2d Cir. 1973), rev'd on other grounds, 290 So. 2d 854 (1974). The appropriate response is the same as found in defendant's argument in brief on the issue of whether a credit for the buyer's use *630 should be allowed absent a prayer for it. C.C.P. 862 provides that a final judgment shall grant the relief a party is entitled to, even if he has not demanded such relief in his pleadings.
[Bolding added.]
[Alexander, 359 So.2d at 613-614.]
The essence of the court's ruling is that the seller in a redhibitory action is put in default when a written demand for rescission is made, the claim is due (ascertainable) when the seller is put in default, and the buyer is entitled to legal interest on his claim from that point in time until paid. Claims for penalty attorney fees (and claims for quantum meruit) are not ascertainable (due) until the date of judgment, and legal interest on such claims only commences at that time.
Mini Togs is a suit for damages for failure to perform a building contract in a workmanlike manner. The contract was entered into on December 29, 1980. Suit was filed on April 14, 1982. The facts recited in the court of appeal opinion do not show that the defendants were put in default prior to the filing of suit and do not show the time when the defendants failed to perform their contractual obligations. The trial court rendered judgment in favor of the plaintiff and granted legal interest on the award from date of judicial demand. The defendants appealed and asserted, among other things, that the trial court erred by granting interest from date of judicial demand. The defendants contended that their liability was uncertain and the damages were unascertainable until there was a trial court judgment, and, thus, legal interest should not run until that time. The court discussed Alexander and affirmed the trial court interest award with the following rationale:
In using the term "ascertainable" the court did not mean that the precise amount of the claim need be liquidated or established without dispute in order for legal interest to commence in a contract claim. In the Alexander case the amount of recovery was in dispute throughout with the amount awarded by the district court being changed by the court of appeal and then again by the supreme court. What was meant was that a debt or claim for the payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date.
. . . .
Applying this analysis to the instant case, defendant is liable to plaintiff for damages sustained by defendant's default. These damages were due from the moment of active violation of the contract or from the time defendant was put in default which was no later than the commencement of the suit. Defendant's debt or obligation to pay money damages bears legal interest from the time the damages were due.
The same result would be reached under the Civil Code articles on obligations as revised effective January 1, 1985. An obligor is liable for the damages caused by his failure to perform a conventional obligation. LSA-C.C. Art. 1994. Damages for delay in the performance of an obligation are owed from the time the obligor is put in default and other damages are owed from the time the obligor has failed to perform. LSA-C.C. Art. 1989. One of the ways an obligee may put an obligor in default is by filing suit for performance. LSA-C.C. Art. 1991. For delay in performance of the obligation to pay damages, legal interest on the amount of damages is payable from the time the damages were due. LSA-C.C. Art. 2000.
. . . .
We hold that legal interest is due at least from date of judicial demand on a claim for damages arising out of breach of contract, regardless of whether the precise amount of the claim is unliquidated, disputed or not ascertainable with certainty at the time suit is filed. The judgment in this case awarding legal interest from date of judicial demand is correct.
[Bolding added.]
*631 [Mini Togs, 513 So.2d at 873-875.]
The due date of the obligation in Mini Togs was not controlled by the contract between the parties or by law. The award of legal interest from date of judicial demand in Mini Togs is correct because there was no evidence of an active violation of the contract (or a failure to perform), or a putting in default, prior to the time that the defendants were put in default by the filing of suit for performance (judicial demand).
The instant case is a suit on an insurance contract; it is not a suit for redhibition based on a contract of sale (Alexander) or a suit on a building contract (Mini Togs). To determine when legal interest commences to run in this case, we must determine when the insurer's obligation to pay the claims of the insured becomes due (ascertainable).
Policies of insurance issued in Louisiana are considered to contain all provisions required by statute. Block v. Reliance Insurance Company, 433 So.2d 1040 (La. 1983). Although the parties to an insurance contract are free to negotiate terms more favorable to the insured, they may not negotiate for terms inconsistent with or contrary to law. Fisher v. Morrison, 519 So.2d 805 (La.App. 1st Cir.1987). La.R.S. 22:658(A), which is applicable to the insurer's policy herein, provides as follows:
All insurers issuing any type of contract, other than those specified in R.S. 22:656 and R.S. 22:657, shall pay the amount of any claim due any insured, including any employee under Chapter 10 of Title 23 of the Revised Statutes of 1950, within sixty days after receipt of satisfactory proofs of loss from the insured, employee or any party in interest.
[Bolding added.]
A claim pursuant to an insurance contract which is controlled by La.R.S. 22:658 becomes due as a matter of law (which is incorporated into the contract) sixty days after a satisfactory proof of loss has been submitted. Trico Services Corporation v. Houston General Insurance Co., 414 So. 2d 1313 (La.App. 2nd Cir.), writ denied, 420 So.2d 165 (La.1982); Haynes v. Standard Fire Insurance Company, 370 So.2d 118 (La.App. 1st Cir.1979). A satisfactory proof of loss within the meaning of La.R.S. 22:658 is that which is sufficient to fully apprise the insurer of the insured's claim. Hart v. Allstate Insurance Company, 437 So.2d 823 (La.1983).[1]
The stipulated facts show that a satisfactory proof of loss was submitted to the insurer by letter dated March 19, 1985.[2] The proof of loss was received on April 1, 1985. Thus, the insurer had until June 1, 1985, to pay the claim. The failure to pay the claim by that date triggered the running of legal interest. The insurer's contention that this contractual debt is not due until the date of judgment (August 25, 1986) is without merit.
However, the insured only prayed for interest from date of judicial demand (July 31, 1985), and the trial court awarded the interest on that basis.[3] The insured did not appeal or answer the appeal requesting legal interest from an earlier date. Accordingly, we cannot change the trial court's judgment in favor of the insured. In this procedural posture, the trial court's judgment on legal interest can only be affirmed. For this reason, the result of the majority opinion is correct.
The majority has applied the Mini Togs rationale to determine when legal interest commences on a contractual insurance claim. Mini Togs held that, when the contractual due date is not fixed by statute or *632 contract and there is no evidence of active breach or a putting in default prior to a judicial demand, the legal interest commences to run from date of judicial demand (which is a putting in default). The majority has failed to apply La.R.S. 22:658 to determine the due date of contractual insurance claims, even though that statute expressly provides the insurer "shall pay the amount of any claim due any insured... within sixty days after receipt of satisfactory proofs of loss from the insured." [Emphasis added.] Why is La.R.S. 22:658 not applicable to determine the due date of a contractual insurance claim? The majority opinion has not answered this question.
The majority opinion has failed to consider the letter of March 19, 1985, which was received on April 1, 1985, as a written demand for payment of the claim, and, thus, a putting in default (as per Alexander). The letter of March 19, 1985, breaks down the cost of repair into five categories (parts and supplies, freight, sales tax, labor and transportation), has attached to it a three page itemized list of parts, and requests reimbursement. The record also reflects that, on April 1, 1985, the insurer received three written statements from witnesses to the incident and photographs. If La.R.S. 22:658 is not applicable, does this letter constitute a written putting in default, and, if it does not, why not?
The majority opinion has failed to follow the Haynes case previously rendered by this circuit. In Haynes, 370 So.2d at 122, this court observed as follows:
The trial court found that as of July of 1977 the insurance company had all of the information it could obtain to determine the amount of loss and therefore by August of 1977, the insurer should have made some attempt at submitting an amount for appellant's consideration. The record reveals that by the end of May of 1977, the insurance company had all of the information necessary for the proof of loss. Therefore, the sixty days as specified in La.R.S. 22:658 would have run by the end of July. We find that as of August 1, 1977, the appellee was arbitrary and capricious in not paying the claim and that interest on the amounts awarded should commence as of August 1, 1977....
Having made these corrections, we will commence the running of interest due from August 1, 1977.
[Bolding added.]
The majority opinion does not explain why Haynes was not followed. Does the majority opinion overrule Haynes by implication, and, if not, when is Haynes applicable?
The majority opinion erroneously applies the Mini Togs rationale to decide this case and fails to follow applicable statutory law and jurisprudence. It raises more jurisprudential questions than it answers.
For the foregoing reasons, we respectfully concur.
NOTES
[1] La.R.S. 22:658 is applicable to unliquidated general damage claims under uninsured motorist coverage. Even though there is a dispute over the exact extent of the general damages, if the other elements of an uninsured motorist general damage claim have been established, the insurer must tender a reasonable amount within sixty days as the amount due under the policy. In that posture, the amount due is that amount over which reasonable minds cannot differ. McDill v. Utica Mutual Insurance Company, 475 So.2d 1085 (La.1985).
[2] We do not pass on whether this written satisfactory proof of loss constitutes a putting in default.
[3] See La.C.C.P. art. 1921; Landry v. Louisiana Hospital Service, Inc., 449 So.2d 584 (La.App. 1st Cir.1984), and the cases cited in Mini Togs.