644 So.2d 818 (1994)
MASSACHUSETTS INDEMNITY AND LIFE INSURANCE COMPANY
v.
Sandra B. HUMPHREYS and Marie C. Jackson.
No. 93 CA 2025.
Court of Appeal of Louisiana, First Circuit.
October 7, 1994.
*819 Francis G. Weller, New Orleans, for plaintiff-appellant Massachusetts Indem. and Life Ins., Co.
Afif Jebara, and Jimmy Simien, Baton Rouge, for defendant-appellee plaintiff in Reconvention Marie C. Jackson.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
LOTTINGER, Chief Judge.
In 1984, Ray A. Jackson and Sandra Humphreys, then a married couple, applied to Massachusetts Indemnity & Life Insurance Company (MILICO)[1] for life insurance. The couple obtained a $75,000.00 policy on Mrs. Humphreys'[2] life and a $75,000.00 spouse rider on Mr. Jackson's life. Mrs. Humphreys was designated owner of the primary policy and the rider. On July 21, 1989, Mr. Jackson and Mrs. Humphreys were divorced.
In July of 1989, Marie Bynum also applied for and received a $75,000.00 life insurance policy from MILICO. On September 9, 1989, Marie Bynum and Mr. Jackson were married. Following their marriage, the Jacksons tried to obtain a spouse rider for Mr. Jackson on Mrs. Jackson's newly acquired MILICO policy. By this time, Mr. Jackson had been diagnosed with leukemia and therefore was uninsurable by MILICO.
According to MILICO, the Jacksons were informed that the only method by which MILICO could insure Mr. Jackson was to transfer the spouse rider from Mrs. Humphreys' policy to Mrs. Jackson's policy. Under MILICO's standard operating procedures, the original rider could not be transferred until Mrs. Humphreys, the primary insured, consented in writing.
According to Mrs. Jackson, however, MILICO informed her that the spouse rider could be transferred without Mrs. Humphreys' signature upon submission of a judgment of divorce, the premium amount and two policy change application forms. Under one form, a new spouse rider would be added to Mrs. Jackson's policy and under the other form, the existing rider on Mrs. Humphreys' policy would be deleted.
Mrs. Jackson submitted the judgment of divorce and the two policy change forms on August 21, 1990. One form, completed for Mrs. Jackson's policy, was signed by Mrs. Jackson, the primary insured, and Mr. Jackson, the potential spouse rider. The second form, completed for Mrs. Humphreys' policy, was signed only by Mr. Jackson. Mrs. Humphreys, the primary insured, did not sign the form.
*820 Following submission of these documents, a spouse rider was issued and delivered to Mrs. Jackson on October 23, 1990. The following day, MILICO's vice president drafted a letter to Mrs. Jackson informing her that without Mrs. Humphreys' signature, the spouse rider could not be transferred. After reading the letter, Mrs. Jackson negotiated the enclosed premium refund check.
Following Mr. Jackson's death on March 12, 1991, Mrs. Jackson submitted a claim to MILICO for $75,000.00. MILICO then initiated this action for declaratory judgment, requesting the district court to declare that Mrs. Jackson was not entitled to any proceeds under the spouse rider. Mrs. Jackson filed a reconventional demand seeking the proceeds of the rider, attorney's fees and interest. The parties submitted the case on a joint motion for disposition on the merits by summary judgment. The district court held that Mrs. Jackson was entitled to benefits under the spouse rider.
On appeal, MILICO raises the following issue: whether the district court erred in concluding that Mrs. Jackson did not assent to "rescission of the coverage when she [was] advised a day after the coverage [was] issued that the coverage was improvidently issued, her premium [was] returned to her, and she knowingly cashe[d] the premium refund check four months before any loss occurs under the purported coverage." In her answer to the appeal, Mrs. Jackson asserts that the district court erred in failing to hold MILICO liable for damages, attorney's fees and interest.

VALIDITY OF THE SPOUSE RIDER
In its petition, MILICO asserts that the spouse rider was "issued through mistake and clerical error" and that upon discovering this error, it notified Mrs. Jackson "that the spouse rider was invalid, and refunded ... the amount of the premium...." Contrary to this assertion, we conclude that the rider was valid.
Under Louisiana law, "[c]ontracts have the effect of law for the parties and may be dissolved only through the consent of the parties or on grounds provided by law...." La.Civ.Code art. 1983. The law provides that a contract may be invalid when consent is vitiated by error, fraud, or duress. La.Civ. Code art. 1948. Error vitiates consent only when it "concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party." La.Civ.Code art. 1949. However, unilateral error does not vitiate consent if the cause of the error was the complaining party's inexcusable neglect in discovering the error. Scott v. Bank of Coushatta, 512 So.2d 356 (La.1987); Woods v. Morgan City Lions Club, 588 So.2d 1196 (La.App. 1st Cir.1991).
MILICO admitted that the rider was issued through its own mistake and clerical error. Upon issuance, MILICO had in its possession, the judgment of divorce and two change order forms submitted by the Jacksons. MILICO issued the spouse rider on Mrs. Jackson's policy without first obtaining Mrs. Humphreys' signature on the appropriate change order form. Even assuming that this error concerns MILICO's cause in creating the obligation, MILICO's inexcusable neglect in failing to secure Mrs. Humphreys' signature, precludes it from claiming that the error vitiated its consent. Therefore, we conclude that the contract between MILICO and Mrs. Jackson was valid from its inception.

RESCISSION
Having determined that the spouse rider was valid, we now address MILICO's contention that Mrs. Jackson assented to rescission of the rider.[3] According to MILICO, when an insurer issues a premium refund check and explains that the premium is being returned because the policy is rescinded, the insured, by cashing the check, consents to the rescission and is barred from suing to recover the proceeds of the policy. In support of this argument, MILICO cites *821 Vest v. Richardson, 253 So.2d 97 (La.App. 4th Cir.), writ denied, 254 So.2d 618 (1971). In Vest, the insurer sought to rescind an automobile policy after discovering that the insured made material misrepresentations on the insurance application. Id. at 99. The court first found that the insurer had the burden of proving that the policy had been rescinded. Id. at 100. The court then stated that although the insurer had the right to rescind the policy, the insurer failed to meet its burden of proof as there was no evidence that the insured received the letter of rescission or that the insured negotiated the premium refund check. Id.
In the present case, MILICO asserts that the spouse rider was rescinded. To prove the rescission, MILICO submitted evidence of Mrs. Jackson's receipt of the rescission letter and the canceled premium refund check. Relying on Vest, MILICO contends that this evidence proves that the rider was effectively rescinded.
However, Vest is distinguishable on its facts. In Vest, the insurer had a right to rescind the contract for material misrepresentation. Here, the insured made no material misrepresentations giving MILICO the right to rescind the contract. Therefore, the holding of Vest is inapplicable to the present situation.
The record reflects that Mrs. Jackson's decision to cash the premium refund check was based on information provided to her in the MILICO letter.[4] We agree with the district court's conclusion that:
... DEFENDANT'S NEGOTIATION OF THE PREMIUM REFUND CHECK DID NOT CONSTITUTE A KNOWING AND VOLUNTARY WAIVER OF THE "SPOUSE RIDER" VALIDLY ISSUED BY PLAINTIFF.... PLAINTIFF CLEARLY INDICATED THAT THE "SPOUSE RIDER" WAS IN FACT INVALID AND/OR VOID FROM THE DATE OF ISSUANCE.... IN THAT DEFENDANT'S DECISION TO NEGOTIATE THE PREMIUM REFUND CHECK WAS BASED UPON THIS MISLEADING CORRESPONDENCE, SAID NEGOTIATION DID NOT CONSTITUTE A KNOWING AND VOLUNTARY RESCISSION.
Because MILICO did not have the right to rescind the contract and because Mrs. Jackson did not knowingly consent to a rescission, the policy remains in force. Therefore, we affirm that portion of the district court's decision granting Mrs. Jackson the proceeds of the policy subject to a deduction equivalent to all premium payments which would have been necessary to keep the policy in force.

DAMAGES, ATTORNEY'S FEES AND INTEREST
In answer to MILICO's appeal, Mrs. Jackson asserts that because MILICO committed fraud, she is entitled to damages and attorney's fees under La.Civ.Code arts. 1953 and 1958. However, we conclude that article 1958 is inapplicable in the present case. According to this article, "[t]he party against whom rescission is granted because of fraud is liable for damages and attorney fees." The contract at issue was not rescinded; therefore, Mrs. Jackson is not entitled to damages and attorney's fees under this article.
Mrs. Jackson also asserts that she is entitled to damages, pre-petition interest and attorney's fees under La.R.S. 22:656 and 22:1220.[5] According to La.R.S. 22:656, an insurer who fails to pay a death claim without just cause within sixty days after receipt of proof of death is liable for penalties. Where an insurer has reasonable ground to believe that its defense is valid, its refusal to pay a claim is not considered as "without just cause" subjecting it to penalties, even though the defense is not upheld by the court. Carr v. Port Ship Service, Inc., 406 So.2d 632, 635 *822 (La.App. 1st Cir.1981), writ denied, 412 So.2d 85 (1982). We conclude that MILICO was "without just cause" in failing to pay Mrs. Jackson's claim.
MILICO admitted that the rider was issued. The evidence shows that Patricia Townsend, MILICO's agent, advised the Jacksons that she would attempt to transfer the original rider without Mrs. Humphrey's signature. Toward this end, Ms. Townsend instructed the Jacksons to submit the policy change forms, the judgment of divorce and the premium check. Following submission of these papers, the new rider was issued on Mrs. Jackson's policy without Mrs. Humphrey's signature.
The main defense urged by MILICO is based on rescission of the rider. This defense rests primarily on the letter sent by MILICO to Mrs. Jackson. Because this correspondence was misleading, we conclude that MILICO's reliance on the rescission defense was unreasonable and "without just cause." Therefore, we find that MILICO is liable under La.R.S. 22:656 for penalty interest in the amount of 8% per annum from the date of receipt of proof of death until paid.
Under La.R.S. 22:1220, when the insurer fails to pay a due claim within sixty days and such failure is arbitrary, capricious, or without probable cause, the insurer is liable for damages sustained by the insured as a result of the breach. In order to be liable for such damages, the insured must prove that he sustained damages as a result of the insurer's breach. See Champagne v. Hartford Casualty Insurance Group, 607 So.2d 752, 758 (La.App. 1st Cir.1992). Mrs. Jackson presented no proof that she sustained damages as a result of MILICO's arbitrary and capricious failure to pay the amount of the claim due. Thus, she is not entitled to damages under La.R.S. 22:1220.
Finally, Mrs. Jackson asserts that because MILICO breached its contractual obligation, she is entitled to legal interest from the time that MILICO defaulted or alternatively, from the date of judicial demand. For the following reasons, we amend the judgment to award Mrs. Jackson legal interest from June 15, 1991.
In River Road Construction, Inc. v. Canal Indemnity Company, 538 So.2d 625 (La.App. 1st Cir.1988), we adopted the second circuit's method for determining awards of legal interest in contract suits. In addressing the issue of legal interest, the second circuit stated:
Although the issue as presented to us in this case is whether legal interest should run from date of judicial demand or from date of judgment, neither of those dates are specifically mentioned in the codal articles providing for legal interest on debts or claims arising out of contracts. Cases involving disputes over the time of commencement of legal interest have often been resolved by reference to the time the debt was due, or when the obligor was put in default, or when the claim became liquidated or ascertainable. Often the dispute has been whether legal interest commenced to accrue upon judicial demand or at an earlier date.
The most recent decision of the Louisiana Supreme Court dealing with legal interest on a claim arising out of a contractual relationship is Alexander v. Burroughs Corp., [359 So.2d 607 (La.1978)].... We read the decision in that case as holding that a claim arising out of a contract, whether liquidated or not, bears legal interest from judicial demand or from such earlier date when the claim became ascertainable and due.
. . . .
In using the term "ascertainable" the court did not mean that the precise amount of the claim need be liquidated or established without dispute in order for legal interest to commence in a contract claim.... What was meant was that a debt or claim for the payment of money or damages under a contract is ascertainable and becomes due on the date an active violation occurred or the obligor was put in default, which can be earlier but never later than judicial demand, and legal interest runs from that date.
Mini Togs Product, Inc. v. Wallace, 513 So.2d 867, 873 (La.App.2d Cir.), writs denied, 515 So.2d 447, 451 (La.1987) (Citation added).
*823 In the present case, the judgment of the trial court is silent on the issue of legal interest. However, the facts show that MILICO received adequate proof of death on April 15, 1991. According to the insurance code, MILICO had sixty days from receipt of proof of death to pay the amount due under the life insurance contract. See La.R.S. 22:656.[6] MILICO's failure to pay the claim within sixty days triggered the running of legal interest. For these reasons, we conclude that Mrs. Jackson is entitled to legal interest from the date that the claim was due, June 15, 1991.

CONCLUSION
For the above reasons, the judgment of the district court is affirmed and amended to award Mrs. Jackson legal interest from June 15, 1991. MILICO is ordered to pay penalty interest in the amount of 8% per annum from April 15, 1991. Costs of this appeal are assessed against MILICO.
AMENDED AND AFFIRMED.
NOTES
[1] MILICO is presently operating as Primerica Life Insurance Company.
[2] To avoid confusion, Mrs. Sandra Humphreys Jackson will be referred to as Mrs. Humphreys and Mrs. Marie Bynum Jackson will be referred to as Mrs. Jackson.

The name "Sandra B. Humphreys" was inadvertently included in the title of this lawsuit and was deleted.
[3] We do not address the question of whether the rider was canceled under La.R.S. 22:636 as neither party makes such allegation.
[4] During the pendency of this appeal, MILICO filed, in the trial court, a motion to supplement the record. The motion alleges fraud by Mrs. Jackson. We do not address the fraud issue, as such allegations are more properly raised in a suit to annul. See La.Code Civ.P. art. 2004.
[5] We do not address the issue of attorney's fees as neither of the cited statutes provides for such an award.
[6] We refer to La.R.S. 22:656 only for purposes of determining when the claim became due. The interest awarded in this section is legal interest, not penalty interest.