652 So.2d 647 (1995)
John W. DEGRAVELLES and Michael C. Palmintier
v.
Mark A. HAMPTON.
No. 94 CA 0819.
Court of Appeal of Louisiana, First Circuit.
March 3, 1995.
Writ Denied May 5, 1995.
*648 Michael Patterson, Baton Rouge, for plaintiffs-appellants-appellees.
F. Jefferson Millican, Jennings, for defendant-appellants-appellees.
Before LOTTINGER, C.J., and SHORTESS and CARTER, JJ.
SHORTESS, Judge.
This case renews the age-old adage that "signatures to an obligation are not mere ornaments." Boullt v. Sarpy, 30 La.Ann. 494, 495, 37 La. 326, 327 (1878).
In March 1987, attorneys Michael C. Palmintier and John W. deGravelles (plaintiffs) executed a twelve-year lease for office property located at 628 St. Louis Street in Baton Rouge with the owner of the property, Mark A. Hampton (defendant). Under the terms of the lease, plaintiffs agreed to be responsible for carrying liability and property insurance and for all taxes or assessments. The lease term underlying this dispute is:
ARTICLE XII
Maintenance and Repairs
Lessor warrants that the leased premises are in good condition. Lessor shall pay and be responsible for the upkeep and maintenance of the Leased Premises, the permanent equipment, mechanical components, roofs, ceilings, walls, structure, sewerage and plumbing within the ceilings or walls, except those repairs resulting from Lessee's negligence. Lessor shall make repairs within a reasonable time after notice from Lessee, who shall notify Lessor within a reasonable time after discovery of any defects. Lessee shall be responsible for furnishing and changing all light bulbs and air conditioning filters.
Lessor agrees to remove all trash, debris, cement and other litter from the Demised Premises, including but not limited to that area described in Exhibit "A".
Plaintiffs sued defendant for specific performance and for damages after incurring $20,820.81 in costs for maintenance and repairs on the leased premises, for which defendant had refused to effectuate and to pay.
The trial court attempted a Solomon-like resolution to the matter. It found that none of the parties were disproportionately unsophisticated or unequal in negotiating power. The court further found defendant intended to sign a "triple net" lease,[1] but nevertheless *649 signed a document obligating himself to pay for certain upkeep on the premises. The trial court specifically found defendant would not have entered into the agreement if he had realized he was assuming responsibility for maintenance and repairs.
Applying Louisiana Civil Code articles 1951 and 1952, the trial court awarded damages in the amount of the actual costs incurred by plaintiffs, then allowed plaintiffs to choose between rescinding the lease or continuing the lease as modified to shift the responsibility for repairs and maintenance to plaintiffs.
Both parties appealed. Plaintiffs contend the trial court erred by failing to enforce the lease as written, by finding unilateral error sufficient to vitiate the lease, in ordering plaintiffs to elect to cancel or modify the lease, and in failing to award attorney fees. Defendant contends the trial court should have reformed the lease retroactive to the date of execution and should not have awarded plaintiffs any damages.
A valid obligation requires, among other factors, consent. La.C.C. art. 1927. Consent may be vitiated by error, fraud, or duress. La.C.C. art. 1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art. 1949.
Cause is the reason why a person obligates himself. Error may concern a cause when it bears on the nature of the contract or any other circumstance that the parties regarded, or should have in good faith regarded, as a cause of the obligation. La.C.C. art. 1950; Twin City Pontiac, Inc. v. Pickett, 588 So.2d 1125, 1128 (La.App. 2d Cir.1991).
The testimony established, and the trial court found as fact, that plaintiffs herein understood the terms of the lease as written. At no time did plaintiffs intend or understand that they would be responsible for maintenance and repairs. The contract was primarily drafted by defendant and brought to plaintiffs' office for signing by defendant. After some negotiating on other terms, both parties signed the contract. Thus, the evidence did not establish bilateral error.
A contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, but only when the other party knew or should have known that it was a principal cause. Shreveport Great Empire Broadcasting, Inc. v. Chicoine, 528 So.2d 633 (La.App.2d Cir. 1988). Furthermore, unilateral error does not vitiate consent if the reason for the error was the complaining party's inexcusable neglect in discovery of the error. Scott v. Coushatta, 512 So.2d 356 (La.1987); Massachusetts Indemnity & Life Ins. Co. v. Humphreys, 93-2025 (La.App. 1st Cir. 10/7/94); 644 So.2d 818.
The trial court found defendant made a unilateral error because defendant did not understand he was assuming responsibility for maintenance and repairs. This finding was clearly wrong in light of the unrebutted testimony of defendant's attorney John Aydell.
Defendant consulted Aydell approximately an hour before he met with plaintiffs. According to Aydell, defendant said he had a "triple net" lease. Aydell was unfamiliar with this term. Defendant explained that under this type of lease plaintiffs were responsible for repairs and maintenance, as well as taxes and insurance. Aydell asked to see the lease and specifically looked at who had responsibility for these items under the lease. He testified he told defendant to change the maintenance and repair term because, as written, it made defendant responsible. Defendant went on to plaintiffs' office, where he presented the lease. Some further negotiations took place, but not concerning this particular term.
Defendant did not contradict Aydell's testimony. He did not explain or deny that Aydell advised him that as written the lease *650 placed responsibility for maintenance and repairs on him. Defendant, for whatever reason, did not change this term, but, nevertheless, signed the lease. Clearly defendant understood the impact of this term and knew he needed to change it in order to shift responsibility to plaintiffs. His failure to do, whatever the reason, was inexcusable neglect rather than unilateral error sufficient to vitiate his consent. The Civil Code does not contemplate a vitiation of consent under these circumstances.
The trial judge was clearly wrong in finding unilateral error and should have enforced the lease as written. None of the parties to the contract were uneducated or disadvantaged in the process of negotiating this lease. Defendant had previous real estate transaction experience and did not misunderstand any of his other obligations under the lease.[2]
Article XXXII of the lease also provides that "[i]n the event a dispute arises regarding this Lease, the prevailing party shall be entitled to recover reasonable attorney's fees and costs in prosecuting or defending any action." Plaintiffs' attorney submitted a statement to the trial court showing fees due through preparation for trial totaling $4,058.03. This statement does not reflect fees for trial and this appeal. We find plaintiffs are entitled to attorney fees of $7,058.03 as the prevailing party in this matter, which includes the $4,058.03 figure plus additional fees of $3,000.00 for trial and appeal.
The portion of the judgment awarding damages is amended to $7,058.03 to include the award of attorney fees, and, as amended, affirmed. The judgment of the trial court ordering plaintiffs to choose between rescinding the contract or continuing it as reformed is hereby reversed. Judgment is rendered ordering the lease be enforced as written for the remainder of the term. All costs of this appeal are assessed to defendant.
AMENDED IN PART AND, AS AMENDED, AFFIRMED IN PART; REVERSED IN PART AND RENDERED.[3]
NOTES
[1] A "triple net" lease is a real estate term describing an agreement which makes the lessee responsible for all insurance, taxes, and maintenance or repairs. The lessee then pays a "net" price to the lessor after deducting these expenses. Typically the rent price reflects this shift in responsibility.
[2] Defendant argued that he misunderstood the impact and use of "ee" and "or" in the terms "lessee" and "lessor" in the maintenance and repair term. Defendant, however, does not claim he misunderstood any of his other obligations as "lessor" under the lease, including a specific obligation to remove certain debris which was contained in the maintenance and repair clause.
[3] The result reached in this case makes it unnecessary to consider defendant's appeal.