laKUHN, Judge.
This is an appeal from a judgment reforming the amount of the reduced retirement allowance the Sheriffs’ Pension and Relief Fund (“SPRF”) is obligated to pay to plaintiff, a deputy sheriff. We reverse.
ISSUE
The trial court concluded that plaintiffs misunderstanding of the amount of reduced retirement allowance he was electing to receive constituted error. The sole issue presented in this appeal is whether the trial court erred in finding this error was sufficient to support reformation of the obligation.
THE SHERIFFS’ PENSION AND RELIEF FUND
Sheriffs and deputy sheriffs within the state of Louisiana are members of a state-created retirement system. La. R.S. 11:2m.[1]
La. R.S. 11:2178(0[2], provides in relevant part:
(3) Any sheriff or deputy who has twenty or more years of creditable service shall be eligible for retirement provided he has attained the age of fifty-five years, upon making written application to the board, and shall be paid a monthly sum equal to three percent of his average monthly salary for the thirty-six highest successive months of employment, or the highest thirty-six successive joined months of employment where interruption of service occurred multiplied by the number of years of his creditable service in the fund.
An eligible member may elect to receive benefits in a retirement allowance payable throughout life (referred to as the “maximum benefit”); or may, upon application for retirement, elect to receive the actuarial equivalent of that retirement allowance in a ^reduced retirement allowance payable throughout life. La. R.S. 11:2178(I)(1). The provisions of sec. 2178(I)(l)(a)-(e) set forth the various options available to a member electing to receive a reduced retirement allowance. Under La. R.S. ll:2178(I)(l)(b), the member may elect the option which provides that upon his death, the reduced retirement allowance shall be continued throughout the life of and paid to the member’s spouse.
Section 2178(I)(2) states:
No option shall become effective until the date specified by the member in the application for retirement and no change in the option selected shall be permitted after the application has been officially filed with the board [of trustees for SPRF].
In lieu of terminating employment and accepting a service retirement allowance under sec. 2178, any eligible member may participate in the Deferred Retirement Option Plan (“DROP”) and defer receipt of benefits in accordance with La. R.S. 11:2178(M). The duration of the DROP plan is not to exceed two years. La. R.S. 11:2178(M)(3).
La.R.S. 11:2178(M)(4) delineates:
A person may participate in the [DROP] plan only once. At the time the member elects to participate in the plan, the member shall exercise a retirement option for service retirement under the provisions of Subsection I of this Section and no change in the option selected shall be permitted after it has been filed with the board [of trustees for SPRF].
With this statutory back drop in mind, we turn now to the matter presently before us.
FACTUAL AND PROCEDURAL BACKGROUND
In 1964, plaintiff began working for the St. Martin Parish Sheriff’s Office (“Sheriffs Of *14 fice”). During the summer of 1990, plaintiff was offered the opportunity to participate in DROP. Plaintiff requested that his co-employee, Judy Douet, calculate the amount he was eligible to receive should he decide to participate in DROP effective July 1, 1990. Douet was appointed by the Sheriff’s Office to perform the duties of Liaison |4Officer to SPRF. Plaintiff, aware that various options permitted a member to receive a reduced allowance in the maximum monthly retirement benefits, advised Douet that he wanted to select the option which would, upon his death, pay to his wife the same amount of monthly benefit he would be ' receiving. Douet determined plaintiff’s maximum benefit to be an amount “slightly in excess of $2400.00.”
In order to calculate the amount plaintiff would receive under the reduced allowance he had described to Douet, the Liaison Officer looked to the members’ handbook (entitled “Handbook Compiled to Provide Information Regarding Benefits & Privileges of the System to Members of the Sheriffs Pension & Relief Fund”). The description of the reduced allowance given by plaintiff was set forth on page 11 as Option Two. The handbook included an example of an Option Two election by a member who was 56, and whose wife was 54, at the time of the member’s retirement, and advised that the maximum benefit that member would be eligible to receive was to be multiplied by a factor of .85562 to determine that member’s reduced allowance. Douet then calculated plaintiffs maximum benefit, which was slightly more than $2400.00, by the same factor of .85562 to produce a reduced monthly allowance in the amount of $2053.55.[3] Plaintiff, satisfied with the amount Douet advised him he was eligible to receive, submitted an application requesting to participate in DROP. The DROP application, signed by plaintiff on July 17, 1990, states in relevant part:
DATE DROP PARTICIPATION BEGINS 07-01-90 * * *
DATE DROP PARTICIPATION ENDS 06-30-92 * * *
Applicant is currently employed by this Sheriffs Office and employment is expected to continue until 06-30-92, the same date specified as ending date of participation in the DROP.
I sin response to plaintiff’s DROP application, SPRF sent plaintiff a letter, dated August 2,1990, advising plaintiff of the estimated amounts SPRF had computed for him under the various options available to a member. The letter reads in pertinent part:
Dear Mr. Durand:
As you requested, we have computed benefits for you effective July 1, 1990, the date of your entrance into DROP. Your estimated benefits are as follows:
Maximum The monthly benefit would be $2400.07, payable until death, leaving nothing to your estate unless death occurs before you have received in benefits the total amount of your member contributions to the Fund.
******
Option Two The monthly benefit would be $1532.64 for you until death and $1532.64 for your surviving spouse until death.
* * * * * *
. Please consider each option carefully; once you have selected an option under the DROP, you will not be allowed to change your option or your beneficiary, if applicable, upon your retirement. After selecting your option, complete the appropriate form and return it to our office so we can continue processing your application.
On August 24, 1990, plaintiff executed the Option Two election affidavit enclosed in the August 2, 1990 letter. The prepared form required the member to fill in his name, the Sheriffs Office he worked with, the effective date for retirement benefits, the member’s date of birth, and his spouse’s date of birth. The member and his spouse were required to execute the form before a notary public. *15 The notarized document states, in pertinent part, that plaintiff:
is making application to the members of the Board of Trustees, [SPRF], for retirement benefits effective on the 1st day of July, 19[90 ], and that in connection he ... ■wishes to avail himself ... of the provisions of Option Two under Sub-section I, [Section 2178, Title 11], of the Louisiana Revised Statutes....
| ftAfter receipt of the executed Option Two affidavit, SPRF deposited the amount set forth in its estimated computations of plaintiff’s Option Two benefits into plaintiffs DROP account for two years.[4]
On May 5, 1992, plaintiff filed this lawsuit naming the Board of Trustees for SPRF as a defendant and asserting that plaintiff was entitled to a reduced monthly retirement benefit allowance in the amount calculated by Liaison Officer Douet. After a trial on the merits was held on May 11, 1995, the trial court concluded that the example in the members’ handbook that Liaison Officer Douet relied upon to make her calculations of plaintiffs Option Two reduced monthly allowance was ambiguous; and that as a result, plaintiff, who relied on Douet’s calculations, “misunderstood the very nature of the contract.” The trial court reformed the obligation between plaintiff and SPRF to conform to plaintiffs understanding and awarded plaintiff “the monthly benefit of $2058.55” as well as “reimbursement of the difference between the $1,532.64 which represents the monthly benefit amount actually paid and $2,053.55 which should have been paid since his retirement.” SPRF appeals the trial court’s judgment urging the trial court’s determination is erroneous.
ANALYSIS
SPRF contends the trial court’s reformation of the obligation between plaintiff and SPRF permits plaintiff to withdraw on the basis of unilateral error. SPRF urges that when plaintiff executed the affidavit electing a reduced allowance under Option Two, he was Rfully aware of the amount of monthly benefit he would receive. As such, SPRF asserts, his unilateral error was not sufficient to vitiate consent so as to permit a reformation of the obligation. We agree.
A valid obligation requires, among other factors, consent. La. C.C. art.1927. Consent may be vitiated by error, fraud, or duress. La. C.C. art.1948. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. C.C. art.1949.
Cause is the reason why a person obligates himself. Error may concern a cause when it bears on the nature of the contract or any other circumstance that the parties regarded, or should have in good faith regarded, as a cause of the obligation. La. C.C. art.1950; deGravelles v. Hampton, 94-0819, pp. 3-4 (La.App. 1st Cir. 3/3/95); 652 So.2d 647, 649, writ denied, 95-0826 (La.5/5/95); 654 So.2d 332.
A contract may be invalidated for unilateral error as to a fact which was a principal cause for making the contract, but only when the other party knew or should have known that it was a principal cause. Id. Unilateral error does not vitiate consent if the reason for the error was the complaining party’s inexcusable neglect in discovery of the error. Scott v. Bank of Coushatta, 512 So.2d 356, 361 (La.1987); deGravelles, 94-0819 at p. 4; 652 So.2d at 649.
The trial court found that plaintiff “would not have retired effective July 1,1990, had he *16 understood that his retirement would be computed at .63858 instead of .85562 as he was led to believe.” This finding is clearly wrong.
As noted above, by letter dated August 2, 1990, plaintiff was advised by SPRF that his reduced retirement allowance monthly benefit under Option Two would be $1532.64. Plaintiff acknowledged that he received the letter and that “[i]t was 500 and some odd | gdollars less per month” than the amount Douet had calculated. Despite his clear knowledge that “[t]he monthly benefit would be $1532.64 for you until death and $1532.64 for your surviving spouse until death,” plaintiff nevertheless executed the enclosed form selecting Option Two.
Plaintiff conceded that after he received the August 2, 1990 letter from SPRF and prior to his execution of the Option Two affidavit on August 27,1990, he called SPRF and spoke with Yvonne Richardson, an assistant seeretary/treasurer for the Board of Trustees for SPRF. He testified that he explained to Richardson that he and Douet looked at the Option Two example in the handbook and relied on it to calculate his Option Two benefit. Plaintiff admitted that Richardson explained the discrepancy between the amount SPRF computed and the amount Douet calculated was based on the actuary’s determinations. Thus, despite any ambiguity that may have been created by the members’ handbook when Douet initially calculated plaintiff’s Option Two benefit, plaintiff was clearly aware that Douet’s calculation was not accurate. Rather than withdrawing his application to participate in DROP and retire effective July 1, 1992, or attaching a notation stating that he understood he was receiving the amount Douet calculated, or attaching some expression suggesting contention with the amount SPRF determined he was eligible to receive, plaintiff executed the Option Two affidavit. Clearly, plaintiff was fully aware that Douet’s calculation was erroneous prior to his execution of the Option Two affidavit.
Nothing in the record supports a finding that SPRF had knowledge that plaintiff’s execution df the Option Two affidavit was premised on him receiving as a reduced retirement allowance, his maximum benefit multiplied by the factor of .85562 rather than the amount of $1532.64 that SPRF had specified in the August 2,1990 letter. Additionally, it is noteworthy that for the entire two years that plaintiff participated inJgDROP, he accepted without protest, the amount SPRF deposited into his DROP account. SPRF did not know, and had no reason to know, that any misunderstanding plaintiff may have been operating under when he executed the Option Two affidavit was a principal cause for his decision to accept retirement benefits.[5]
*17 As this court has noted, “ ‘signatures’ to an obligation are not mere ‘ornaments.’ ” deGravelles, 94-0819 at p. 2; 652 So.2d at 648 (citing Boullt v. Sarpy, 30 La.Ann. 494, 495, 37 La. 326, 327 (1878)). Plaintiff may not benefit from his unilateral error under the facts of this ease and the trial court’s conclusion to the contrary is erroneous.
CONCLUSION
The trial court’s determination reforming the obligation between plaintiff and SPRF to conform to plaintiffs understanding of the amount he would receive under the Option Two election for a reduced retirement allowance is reversed. The May 21, 1996 judgment awarding to plaintiff a monthly benefit of $2053.55, and “a reimbursement of | xothe difference between the $1,532.64 which represents the monthly amount actually paid and $2,053.55 which should have been paid since his retirement” is hereby reversed. All costs of this appeal are assessed to plaintiff, Allan B. Durand.
REVERSED.

. At the time plaintiff submitted an application requesting to participate in the Deferred Retirement Option Program, the retirement system for sheriffs and deputy sheriffs was statutorily set forth in La. R.S. 33:1451-1460. By La. Acts 1991, No. 74 § 3, the legislature re-designated these provisions to La. R.S. 11:2171-2184. All statutory references to the provisions regulating the SPRJF in this opinion are to the current designation. A disposition table setting forth the re-designation appears prior to Title 11 of the Revised Statutes.

. Although the provisions of La. R.S. 11:2178 have subsequently been amended, the parties do not dispute the version in effect in August 1990 is the one applicable to the facts of this case.

. Although there is no evidence establishing the exact amount Douet advised plaintiff he would be entitled to receive under an Option Two election effective July 1, 1990, the parties stipulated that "[i]f the handbook example ... is used to compute the Option Two benefit, the benefit would equal $2053.55.”

. While the record fails to establish either the date SPRF began depositing payments into plaintiff's DROP account, or the exact amount, it is clear that the deposits were made and that the amount was approximately $500.00 less than what Liaison Officer Douet had calculated. We note that in the allegations of plaintiff's petition, he asserts he has “been damaged by the fact that the proper allocation of his retirement benefit would have resulted in an additional $535.14 per month added to his ‘DROP’ program for a period of 24 months ..and that as a result he "has been. ... damaged to the extent of $12,-843.36_" Thus, the parties do not dispute that SPRF deposited monthly payments into plaintiff’s DROP account for two years; or that the amount was approximately $1532.64, as SPRF specified in the August 2, 1990 letter to plaintiff which advised him of the estimated amount he would be eligible to receive under an Option Two election.

. The trial court found that plaintiff "did not become aware of the discrepancy or the magnitude of the calculation estimate until he received official notice from [SPRF]. At that time, [SPRF] refused to allow [plaintiff] to change his option even though they were aware of the misunderstanding caused by the ambiguous language in the handbook.” Although this finding is supported by plaintiff’s testimony that at an August 1990 SPRF convention he spoke with some (unnamed) person who advised him that his option could not be changed, we find it to be of no moment. Plaintiff testified that he "wanted the option in which when I died my wife would have the same amount as I’m having.” Hence, plaintiff was not dissatisfied with his option selection, but rather with the amount SPRF determined he was entitled to receive under an Option Two selection. Additionally we note that in order to conclude SPRF refused to allow plaintiff to change his option after he received the August 2, 1990 letter, the trial court must have implicitly determined that upon receipt of that letter plaintiff had already "officially filed” his application with the board of trustees for SPRF. However, the record establishes through Richardson’s un-controverted testimony that a member’s option selection is not "final” until receipt of the first benefit check. While plaintiff may have been under the impression that his application had been "officially filed” prior to the time he executed the Option Two affidavit, nothing precluded him from inquiring of the board of trustees for SPRF (rather than unnamed parties at a convention) whether he could withdraw his application due to his dissatisfaction with the amount SPRF determined he was eligible to receive under his Option Two selection. Richardson’s uncontro-verted testimony also establishes that SPRF dealt not only with plaintiff but also with plaintiff's son, who is the attorney representing plaintiff in this matter. Louisiana jurisprudence is sprinkled with cases which deny relief to parties who claim an agreement should be invalidated because of unilateral error which is caused, in large part, by the complaining party’s inexcusable ignorance, neglect, or want of care. Scott v. Bank of Coushatta, 512 So.2d 356, 362 & n. 12 *17 (La.1987). In short, plaintiffs failure to appreciate the ramifications of executing the Option Two affidavit despite clear knowledge of the amount he was eligible to receive preclude reformation of the obligation based on his unilateral error.