PETTIGREW, J.
[2In this appeal, intervenors challenge the trial court’s judgment, granting summary judgment in favor of defendant and dismissing all claims against defendant with prejudice. For the reasons that follow, we reverse in part and remand for further proceedings.
FACTS AND PROCEDURAL HISTORY
The history of this case dates back to June 2011, when we issued a ruling concerning a partial summary judgment rendered in favor of GE Commercial Finance Business Property Corporation (“GECF”) on the issue of liability pursuant to loan documents entered into between the parties. GE Commercial Finance Business Property Corp. v. Louisiana Hosp. Center, L.L.C., 2010-1838 (La.App. 1 Cir. 6/10/11), 69 So.3d 649 (GE I). While the underlying facts of this case are well known to both this court and the parties herein, a brief review of the procedural history that has brought us to this point is necessary for a complete understanding of the court’s analysis that follows.
GECF is the holder and owner of a promissory nóte entitled “Amended and Restated Promissory Note,” executed by Louisiana Hospital Center, L.L.C. (“LHC”), dated January 31, 2007, for the amount of $18,000,000.00 (“the Note”). The Note amended and restated an earlier promissory note in the amount of $15,000,000.00 that LHC had executed in favor of GECF on February 25, 2005. LHC executed the Note to acquire financing from GECF for the construction of a medical office and hospital' facility in Hammond, Louisiana. As security for the financing, LHC executed a “Multiple Indebtedness Mortgage, Assignment of Leases and Rents, Security Agreement and Fixture Filing,” as well as a separate “Assignment of Leases and Rents,” in favor of GECF. As additional security for the Note, Badr Idbeis, Steven J.- Phillips, Stephen J. Harris, and twenty other individuals executed an unlimited guaranty agreement, entitled “Amended and Restated Guaranty Agreement (Construction Loan),” on January 31, 2007. This guaranty amended and restated an earlier unlimited guaranty, entitled “Guaranty Agreement (Construction Loan),” in favor of GECF, that was executed by the same guarantors on various dates, as security for the original promissory note, .in the [oamount of $15,000,000.00. LHC executed a “Construction Loan Agreement” with GECF, which governed the terms and conditions of the Note, as well as the scope of LHCs obligations under the various loan documents described above.
In order to acquire certain tax incentives, LHC executed an “Act of Sale” on February 1, 2006, whereby it transferred the hospital to the Hammond Area Economic and Industrial Development District *618 (“HAEIDD”). The sale was made subject to GECF’s Mortgage and Assignment of Leases and Rents. In connection with the sale, HAEIDD then leased the hospital back to LHC and issued a taxable revenue bond, entitled “Taxable Revenue Bond (Louisiana Hospital Center, L.L.C. Project) Series 2006,” to GECF in the amount of $15,000,000.00 (“the Bond”). The Bond was governed by the “Indenture of Mortgage and Pledge,” executed between HAEIDD and Hancock Bank of Louisiana, the Trustee of the Bond. According to the clear language of the Bond, it was issued to represent the same concurrent indebtedness as the indebtedness that was owed under the Note. Likewise, the terms of the lease agreement between HAEIDD and LHC are equally as explicit in declaring that the lease would not “disturb” the Note between GECF and LHC.
On October 1, 2007, LHC failed to make the regular monthly payment due on the Note, and GECF notified LHC that all amounts would be accelerated if the October monthly payment was not made by October 22, 2007. On October 15, 2007, LHC made a partial monthly payment, which did not cure the outstanding event of default on the Note. Thus, GECF accelerated the entire balance due under the Note and made amicable demand on LHC and the guarantors to pay the outstanding balance of the Note in full.
In addition to defaulting on the Note, LHC failed to make payment on the principal and interest due on the Bond as of October 2007, thereby constituting a default under the lease between HAEIDD and LHC. LHC also failed to pay its annual administrative fees, failed to meet operating and employment requirements of the lease, and failed to make rental payments under the lease, all breaches of the lease between HAEIDD and LHC. As a result, in February 2008, HAEIDD notified LHC that it 14was invoking acceleration, making all payments under the lease immediately due and payable. HAEIDD sent a series of demand letters to LHC culminating in a March 3, 2008 letter, which purportedly terminated LHC’s lease and advised that HAEIDD would “undertake to lease [the hospital] to another party.”
On March 27, 2008, HAEIDD entered into a Memorandum of Agreement (“MOA”) with Robert J. Bruno and Robert Bruno Company, LLC (hereinafter collectively referred to as “Bruno”), concerning the hospital project stating that HAEIDD and Bruno “shall enter into a new lease pursuant to which Bruno, shall lease and complete construction of the Hospital Project.” Additionally, the MOA stated:
Upon the execution of this Memorandum Agreement along with the payment of $145,000.00 to HAEIDD (the “Option Payment”), the parties agree that the New Lease will be on the terms and subject to conditions substantially identical to those contained in that certain Lease Agreement by and between HAEIDD and Louisiana Hospital Center, LLC. {“LHC”)l]
On April 21, 2008, HAEIDD and Bruno executed the lease agreement that is at issue in this appeal. The lease between HAEIDD and Bruno contained the following pertinent language:
WHEREAS, [HAEIDD] formerly entered into a lease agreement with LHC dated as of February 1, 2006 in connection with the issuance of the Bonds and the proposed development of the Project (the “LHC Lease”); and
WHEREAS, after numerous continuing and uncured defaults (including nonpayment of rent), [HAEIDD] terminated the LHC Lease in accordance with its terms; and
WHEREAS, the parties hereto desire to enter into a subsequent lease of the *619 land and improvements constituting the Project as described herein in such a manner as to preserve the repayment structure of the Bonds in substantially the same manner as was provided for in the LHC Lease;
[[Image here]]
WHEREAS, as an inducement to the granting of this Lease and the opportunity for [Bruno] to complete the development of the Project and to enter into this lease agreement, [Bruno] has paid to [HAEIDD] the nonrefundable sum of $145,000 (“Option Payment”)[.]
On September 26, 2008, during the course of the proceedings in GE I, HAEIDD filed a “Reply Memorandum To Oppositions To HAEIDD’s Motion For Partial Summary Judgment,” in which HAEIDD stated that it did not actually terminate the LHC lease, but |Brather opted for another remedy available against LHC, i.e., acceleration of rent. Noting that this statement was “directly at odds with HAEIDD’s early oral and written statements to Bruno” and the terms of the lease, Bruno filed a petition for intervention on January 5, 2009, seeking a ruling from the court as to whether the LHC lease was terminated and whether the subsequent April 21, 2008 lease between HAEIDD and Bruno was a valid lease of the hospital property. Bruno argued that if the LHC lease was never terminated, it was entitled to a judgment against HAEIDD in the amount of $145,000.00, the amount that Bruno had paid to HAEIDD for the nonexistent right to lease the hospital property.
The parties subsequently filed cross-motions for summary judgment, arguing that there were no material facts at issue and that the matter was ripe for summary judgment on their respective rights under the lease. Bruno argued that because the LHC lease was never terminated, its belief that it was terminated was an error that concerned a cause without which Bruno would never have paid HAEIDD $145,000.00 and would never have entered into the MOA or the lease. Moreover, Bruno maintained, that cause was one that was known to HAEIDD.
HAEIDD argued that the language of the lease agreement was clear, and the $145,000.00 was a non-refundable payment made by Bruno to secure the option to lease the hospital property. HAEIDD further asserted that Bruno assumed all risks associated with the hospital property and, in fact, contracted for the “hope of a lease.” Finally, HAEIDD maintained that Bruno did not meet any of the benchmarks enumerated in the lease agreement and that “[t]o allow recovery of the [$145,-000.00] in the face of Bruno’s derogation from the benchmarks set forth in the Lease would be inequitable.”
The matter proceeded to hearing on September 17, 2012, at which time the trial court heard argument from respective counsel. At the conclusion of the hearing, the trial court ruled in favor of HAEIDD, granting its motion for summary judgment and denying Bruno’s cross-motion for summary judgment. Judgment was signed by the trial court on October 22, 2012, dismissing, with prejudice, Bruno’s claims against HAEIDD.
|fiIt is from this judgment that Bruno has appealed, assigning error to the trial court’s determination that summary judgment was appropriate “as there are disputed issues of material fact which preclude the granting of summary judgment.”
LAW AND ANALYSIS

Standard of Review and General Principles of Summary Judgment

Summary judgment is subject to de novo review on appeal, using the same *620 standards applicable to the trial court’s determination of the issues. Berard v. L-3 Communications Vertex Aerospace, LLC, 2009-1202, p. 5 (La.App. 1 Cir. 2/12/10), 35 So.3d 334, 339-340, writ denied, 2010-0715 (La.6/4/10), 38 So.3d 302. The summary judgment procedure is expressly favored in the law and is designed to secure the just, speedy, and inexpensive determination of non-domestic civil actions. La.Code Civ. P. art. 966(A)(2). Its purpose is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. Hines v. Garrett, 2004-0806, p. 7 (La.6/25/04), 876 So.2d 764, 769. Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, admissions, and affidavits in the record show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La.Code Civ. P. art. 966(B).
On a motion for summary judgment, the burden of proof is on the mover. If, however, the mover will not bear the burden of proof at trial on the matter that is before the court on the motion for summary judgment, the mover’s burden on the motion does not require that all essential elements of the adverse party’s claim, action, or defense be negated. Instead, the mover must point out to the court that there is an absence of factual support for one or more elements essential to the adverse party’s claim, action, or defense. Thereafter, the adverse party must produce factual evidence sufficient to establish that he will be able to satisfy his evidentiaiy burden of proof at trial. If the adverse party fails to meet this burden, there is no genuine issue of material fact, and the mover is entitled to summary judgment. La.Code Civ. P. art. 966(C)(2); Janney v. Pearce, 2009-2103, p. 5 (La.App. 1 Cir. 5/7/10), 40 So.3d 285, 288-289, writ denied, 2010-1356 (La.9/24/10), 45 So.3d 1078.
|7In ruling on a motion for summary judgment, the judge’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Hines, 2004-0806 at 1, 876 So.2d at 765. Despite the legislative mandate that summary judgments are now favored, factual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion, and all doubt must be resolved in the opponent’s favor. Willis v. Medders, 2000-2507, p. 2 (La.12/8/00), 775 So.2d 1049,1050.

Was Summary Judgment Appropriate Under the Applicable Law?

A lease is defined in La. Civ.Code art, 2668 as follows:
Lease is a synallagmatic contract by which one party, the lessor, binds himself to give to the other party, the lessee, the use and enjoyment of a thing for a term in exchange for a rent that the lessee binds himself to pay.
The consent of the parties as to the thing and the rent is essential but not necessarily sufficient for a contract of lease.
The essential elements of the lease are the thing, the price (rent), and the consent of the parties. Monterrey Center, LLC v. Education Partners, Inc., 2008-0734, p. 7 (La.App. 1 Cir. 12/23/08), 5 So.3d 225, 230.
Consent may be vitiated by error, fraud, or duress. La. Civ.Code art. 1948. Cause is the reason why a person obligates himself. Degravelles v. Hampton, 94-0819, p. 3 (La.App. 1 Cir. 3/3/95), 652 So.2d 647, 649, writ denied, 95-0826 (La.5/5/95), 654 So.2d 332. Error vitiates consent only when it concerns a cause without which the obligation would not have been incurred and that cause was known or should have been known to the other party. La. Civ. *621 Code art. 1949. Error may concern a cause when it bears on the nature of the contract, or any other circumstance that the parties regarded, or should have in good faith regarded, as a cause of the obligation. La. Civ.Code art. 1950.
Fraud is defined in our civil code as “a misrepresentation or a suppression of the truth made with the intention either to obtain an unjust advantage for one party or to cause a loss or inconvenience to the other.” La. Civ.Code art. 1958. Fraud may also ^result from silence or inaction. Id. There are three basic elements to an action for fraud: (1) a misrepresentation, suppression, or omission of true information; (2) the intent to obtain an unjust advantage or to cause damage or inconvenience to the other party; and (3) the resulting error must relate to a circumstance substantially influencing the other party’s contractual consent. Terrebonne Concrete, LLC v. CEC Enterprises, LLC, 2011-0072, p. 9 (La.App. 1 Cir. 8/17/11), 76 So.3d 502, 509, writ denied, 2011-2021 (La.11/18/11), 75 So.3d 464.
In moving for summary judgment, HAEIDD argued that Bruno paid HAEIDD a $145,000.00 option payment in exchange for the opportunity to enter into a lease agreement for the hospital property and that the parties, by agreement, had assigned to Bruno the risk that Bruno may not be allowed to complete the hospital project. HAEIDD further asserted that the lease agreement and the MOA were both clear that the option payment would be nonrefundable regardless of whether Bruno was able to proceed with the hospital project. Finally, HAEIDD maintained that Bruno failed to meet any of the benchmarks required by the lease agreement and that to allow recovery of the option payment in the face of Bruno’s derogation from the benchmarks set forth in the lease agreement would be inequitable.
In support of its motion for summary judgment, HAEIDD submitted the affidavit of Charles R. Miller, Jr., President of HAEIDD. Mr. Miller indicated that he was familiar with the lease and MOA. He stated that the times prescribed in the lease for the benchmarks ranged from May 10, 2008 to December 31, 2008. Mr. Miller confirmed that Bruno had not completed any of the benchmarks and, thus, had breached the lease as of May 10, 2008.
Bruno opposed HAEIDD’s motion for summary judgment, arguing that HAEIDD had failed to introduce any material evidence to support its motion for summary judgment. Bruno alleged that its performance or non-performance under the lease was immaterial to a determination of the issue before the trial court. According to Bruno, the pivotal issue in this case was whether the LHC lease was terminated before HAEIDD leased the property to Bruno. Bruno argued that HAEIDD could not properly charge a | prospective tenant $145,000,00 for the right to lease property when HAEIDD knew that the property had already been leased to another party and that the prior lease was still in effect. Because HAEIDD failed to address these issues in its motion for summary judgment, Bruno maintained that HAEIDD was not entitled to judgment as a matter of law.
In support of its position, Bruno submitted the affidavit of Robert 3. Bruno, the managing member of Robert Bruno Company, LLC. Mr. Bruno attested to his involvement in the “extensive negotiation” of the lease between HAEIDD and Bruno and indicated that “[a]t all times during the negotiation and execution of the [MOA] and the Lease, [he] believed that HAEIDD had terminated the prior lease of the Property to LHC.” According to Mr. Bruno, his belief that the LHC lease had been terminated “was based upon repre *622 sentations made [to him by] HAEIDD’s representatives.” Mr. Bruno stated that had he known that the lease of the hospital to LHC had not been terminated, he would have never executed the MOA or the lease and he would have not paid the $145,000.00 option payment to HAEIDD.
On appeal, Bruno argues that HAEIDD failed to show that no genuine issues of material fact exists, thus precluding summary judgment. Bruno points out that HAEIDD listed only two uncontested issues of material fact in its motion for summary judgment, i.e., 1) that Bruno did not complete benchmarks as required by the lease agreement; and 2) that the lease agreement provided for the $145,000.00 option payment and for indemnification. However, Bruno maintains that this is “plainly insufficient to resolve all material issues of fact.” In the alternative, Bruno asserts that the validity of the lease remains in question and that this, too, precludes summary judgment in favor of HAEIDD. Following a thorough review of the record and the evidence introduced by the parties in support of their respective positions, we agree.
In ruling on a motion for summary judgment, the trial court’s role is not to evaluate the weight of the evidence or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. Guardia v. Lakeview Regional Medical Center, 2008-1369, p. 3 (La.App. 1 Cir. 5/8/09), 13 So.3d 625, 628. A trial court cannot make credibility decisions on a motion for summary judgment. Monterrey Center, LLC, 2008-0734 at 10, 5 So.3d at 232. In deciding a motion for summary judgment, the trial court must assume that all of the witnesses are credible. Independent Fire Ins. Co. v. Sunbeam Corp., 99-2181, pp. 16-17 (La.2/29/00), 755 So.2d 226, 236. Furthermore, summary judgment is seldom appropriate for determinations based on subjective facts of motive, intent, good faith, knowledge, or malice and should only be granted on such subjective issues when no genuine issue of material fact exists concerning that issue. Roger v. Bourgeois, 2006-0322, p. 6 (La.App. 1 Cir. 12/28/06), 951 So.2d 330, 333, writ denied, 2007-0189 (La.3/23/07), 951 So.2d 1105.
Based on our de novo review of the evidence, we conclude that a genuine issue of material fact remains as to whether there was a valid lease between the parties. We base this conclusion on the conflicting affidavits offered by the parties. On the record before us, we are unable to discern whether Bruno was induced to enter into the lease with HAEIDD by alleged misrepresentations made by HAEIDD that may have vitiated Bruno’s consent. Resolution of these unresolved issues is essential to Bruno’s cause of action against HAEIDD. Therefore, we conclude the trial court erred in granting summary judgment in favor of HAEIDD because doing so required the trial court to decide disputed genuine issues of material fact and to make credibility determinations.
CONCLUSION
For the above and foregoing reasons, that portion of the trial court’s October 22, 2012 judgment that granted summary judgment in favor of HAEIDD and dismissed, with prejudice, Bruno’s claims against HAEIDD is reversed, and the matter is remanded for further proceedings. All costs associated with this appeal are assessed against HAEIDD.
REVERSED IN PART AND REMANDED.